**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**UNUM, INC. and Lance W. Dreyer,
Defendants-Appellants.**

No. 79–3190.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 5, 1981.

Rehearing and Rehearing En Banc
Denied Nov. 17, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Marilyn H. Elam, Houston, Tex., for defendants-appellants.

Deborah Marie Frye, Helen M. Eversberg, Mary L. Sinderson, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

The Small Business Administration (SBA), filed suit to collect the balance due on a promissory note executed by Unum, Inc., and Lance W. Dreyer. Defendants-appellants admitted the obligation, but claimed a discharge from liability because

the SBA had unjustifiably impaired the collateral securing the debt by releasing its lien to a third-party purchaser for $1,000. After a bench trial, the district court found that the amount accepted by the SBA was equivalent to the fair market value of the collateral, rejected the defense of unjustifiable impairment, and rendered judgment for the principal and interest due on the note. We affirm.

In February, 1971, Unum purchased three used aircraft, airplane engines, and equipment from the SBA. The SBA had acquired this property in a foreclosure action. The sale was a credit transaction; Unum and Dreyer, individually, executed a promissory note for $61,000, payable to the SBA. The debt was secured by chattel mortgages on the aircraft and engines. Dreyer also executed a separate guaranty agreement on the SBA's standard guaranty form.

The sale included Lockheed Constellations numbered N6924C, N173W and N45516, all parked at Anchorage International Airport. Constellation N173W was flown to Florida; N6924C and three additional engines were sold by Unum and the net proceeds of $12,000 were applied to the SBA loan. The other aircraft, N45516, remained parked at Anchorage Airport throughout 1972, 1973 and most of 1974.

In February of 1973, Unum and Aviation Specialties, Inc., began negotiations for the sale of the two remaining Constellations. The resulting contract required that Aviation Specialties pay $25,000 cash immediately, entitling it to possession of N173W, and that upon Unum reducing the balance of the SBA note to $42,000 and paying the tie-down fees for N45516 accrued at the Anchorage Airport, Aviation Specialties would assume the note balance and take possession of N45516. Aviation Specialties paid the $25,000 and received N173W in February 1973. This aircraft was destroyed in a crash a few months later. After the crash, the relationship between Unum and Aviation Specialties deteriorated. Unum did not pay the tie-down fees and did not reduce the balance on the SBA note. Aviation Specialties informed Unum and the SBA that it considered the contract breached, and disavowed any responsibility under it. Aviation Specialties did not assume the note balance, and Unum made no payments.

In August 1973, officials of Anchorage Airport notified the SBA, Unum, Dreyer, and Aviation Specialties of their intention to sell N45516 to pay the delinquent tie-down fees which then totaled nearly $4,000.[1] In November 1973, the airplane was sold at public sale to Aviation Specialties for $3,670, the highest bid timely submitted. The formal bill of sale, dated October 21, 1974, vested title to N45516 in Aviation Specialties, subject to any existing liens or encumbrances. Aviation Specialties made approximately $20,000 worth of improvements to the aircraft, and in the fall of 1974 flew it to the company's home office in Arizona. On February 18, 1975, in exchange for $1,000 from Aviation Specialties, the SBA released its lien on the Constellation. This sum was credited to the balance due on the note.

The United States filed suit on the note against Unum and Dreyer on January 5, 1976. On February 17, 1976, after the plaintiff had moved for judgment by default, Unum and Dreyer filed their answer to the complaint. Neither party requested trial by jury on the issues presented by the suit on the note. In September 1976, Unum and Dreyer attempted to implead Aviation Specialties as a third-party defendant, alleging breach of contract for the sale of the Constellations. They requested a jury trial on this issue. Aviation Specialties moved for dismissal of the third-party demand against it. On March 16, 1978, the district court granted this motion. Unum and Dreyer did not seek a trial by jury on the issues presented by the original complaint until August 30, 1978, seven days before the final docket call and almost two years and eight months after the suit was filed. The trial judge denied this request.

1. This procedure was authorized by Title 14, Section 10.060 of the Alaska Code which provides for the public sale of airplanes considered abandoned.

Unum and Dreyer, admitting the debt, advanced an affirmative defense claiming discharge from the obligation to the extent of the fair market value of the airplane. They predicated their defense on U.C.C. § 3–606, arguing that the SBA's release of its lien for $1,000 unjustifiably impaired the collateral. Finding that the fair market value of the aircraft was $1,000 when the SBA released its lien, the trial judge concluded that the SBA had not unjustifiably impaired the collateral. Judgment was entered against defendants for the full balance due on the note.

Appellants raise two issues on appeal: whether the trial court erred in not granting a jury trial, and whether the court erred in rendering judgment for the full balance due on the note.

## I. The Jury Request

Appellants contend that they have a right to a jury trial because their request was timely made. We disagree. Rule 38(b) of the Federal Rules of Civil Procedure requires that in order to assert the right to a jury trial, demand must be made "not later than 10 days after the service of the last pleading directed to such issue." "Such issue" means the issue for which jury trial is requested. In the present case, the issue involved the extent of defendants' obligations under the promissory note. The last pleading relating to that issue was filed on February 17, 1976. The demand for jury trial was made on August 30, 1978. Appellants argue that their demand for jury trial in the suit on the note obligation should relate to their previous request for jury trial on their third-party claim against Aviation Specialties. Even if we were to accept defendants' "relation-back" theory, their request was still not timely made because the third-party demand was not filed until over seven months after their answer in the original suit.

Alternatively, appellants contend that the trial judge should have granted their request for jury trial under Fed.R. Civ.P. 39(b). A motion for trial by jury submitted under Rule 39(b) should be favor-

ably received unless there are persuasive reasons to deny it. *Swoffard v. B & W, Inc.*, 336 F.2d 406 (5th Cir.), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1964). Reviewing the salient factors in the case at bar, we conclude that persuasive reasons exist. The request for a jury trial was made only a few days before the final docket call. The plaintiff had prepared its case to be tried to the bench; there was an obvious reliance on depositions and documentary evidence, rather than on live witnesses. Forcing the plaintiff to change its trial strategy on such short notice would have worked a substantial hardship. In addition, the trial judge considered the defendants' explanation for their delay and found it not to be persuasive. We find no abuse of discretion in the denial of the Rule 39(b) motion for trial by jury.

## II. Unjustifiable Impairment of Collateral

Appellants advance three legal theories to support their argument that they should be released from liability in an amount equal to the fair market value of the airplane: (1) they are relieved of liability on the note under U.C.C. § 3–606 because the SBA unjustifiably impaired the collateral when it released its lien; (2) they should be held liable only to the extent the debt exceeds the fair market value of the aircraft because the sale was not commercially reasonable as required by U.C.C. § 9–504(1)(c); and (3) a creditor must act as a fiduciary with regard to a security interest and, as such, must not release the security interest for less than the fair market value of the secured property. We find that none of appellants' theories are applicable to the present case and that even if they were, appellants have failed to establish the facts necessary to prevail on them.

### A. Failure of Proof

Each of appellants' theories is an affirmative defense. As such, appellants had the burden to establish supportive facts; they had the duty to produce competent evidence of the value of N45516 on February 18, 1975, the date the SBA released its lien.

This fact is essential to their defense. That appellants were aware of this is apparent from the comment of their counsel to the district judge:

> If we might, your honor, the defendants would respectfully move the court to have the right to open and close in argument because I believe we are carrying all of the burden.

We find no credible evidence in the record of the fair market value of Constellation N45516 when the SBA released its mortgage. We find testimony of the improvements made to the aircraft after purchase by Aviation Specialties, however, we agree with the trial judge that this amount should not be considered in computing the fair market value. There is a dearth of evidence of the value of the airplane before the improvements by Aviation Specialties restored it to use. The only direct evidence was testimony that it was worth $1,000 at the time of the airport sale. There was other evidence, inferentially indicative of value, consisting of a bid in the airport sale which was not timely submitted. That bid was for an amount approximately $1,000 more than the sum due the airport for tie-down fees. The skillful arguments in appellants' brief cannot fill this evidentiary void.

The trial court concluded:

> At the time of the public sale, Aircraft N45516 had been stripped of its vital functional parts and was not capable of flight. At such time, the aircraft was worth no more than $1000.00.

On the record before us, we cannot say that this finding of fact was clearly erroneous. Fed.R.Civ.P. 52.

### B. The Merits

Even were we to accept the evidence of value after the improvements as a basis for concluding that the $1,000 value found by the district judge was clearly erroneous, the judgment would still be affirmed. Appellants have not convinced us of a viable theory of recovery.

Federal courts are free to "fashion the governing rules" when resolving claims arising out of federal programs such as the SBA loan guaranty program. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). If the effectiveness of a federal program depends upon the application of a uniform rule, varying state rules should not be employed. *United States v. Terry*, 554 F.2d 685 (5th Cir. 1977). Texas and Alaska have both adopted the Uniform Commercial Code (UCC). We accept the UCC, as supplemented by decisions construing various aspects of commercial law,[2] as the rule of decision in this case.

Appellants' first theory is premised on U.C.C. § 3–606 which provides, in part:

> (a) The holder discharges any party to the instrument to the extent that without such party's consent the holder
>
> . . . . .
>
> (2) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

At first blush, this section appears to provide a defense. However, a maker of a note, as opposed to a surety, is not entitled to invoke this defense. *See, e. g., Commerce National Bank v. Baron*, 336 F.Supp. 1125 (E.D.Pa.1971); *Hooper v. Ryan*, 581 S.W.2d 237 (Tex.Civ.App.1979).

This interpretation of 3–606 is soundly based. The maker of a note is always primarily responsible for the debt with no recourse except against co-makers. Sureties, whether accommodation makers or endorsers, are only secondarily liable; they retain a right of recourse against the primary obligor. White & Summers, *Uniform Commercial Code* § 13–12, at 426 (1972). Fairness dictates that if the risk a surety

---

**2.** In an instance as here presented, we are not constrained to follow any modifications to the model UCC made by a forum state, nor are we bound by decisions of the forum state courts. We opt to follow the model UCC and those cases which best supplement the UCC and further its purposes and design. *See United States v. Willis*, 593 F.2d 247, 253 n.7 (6th Cir. 1979).

has agreed to undertake is increased through impairment of the securing collateral by the person to whom payment is due, the surety should be discharged to the extent of the impairment.

■ In the present case, the face of the note reflects that Dreyer and Unum are both makers. There is no evidence that Dreyer was an accommodation maker.[3] Consequently, he may not seek relief under § 3–606.

Appellants next contend that the SBA's sale of its security interest for $1,000 violated Section 9–504 of the UCC, since it was not "commercially reasonable." That section of the UCC addresses the rights and duties of secured creditors and debtors as they relate to the collateral after default. The creditor is allowed to repossess and sell the collateral and the debtor remains liable for any deficiency provided that "every aspect" of the disposition including the method, manner, time, place and terms are commercially reasonable. UCC § 9–504(3). While we entertain serious doubts whether the security interest alone, separate from the property subject to the security, is "collateral" within the intent of this section of the UCC, we need not decide that question as it was not timely presented at trial.

Section 9–504 is an affirmative defense to an attempt by a creditor to collect a deficiency balance, and, as such, it must be specifically pled. We have held that the surety's failure to raise the § 9–504 defense in responsive pleadings constituted a waiver of the defense. *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91 (5th Cir. 1976). In the case before us, no 9–504 defense was pled and there was no consideration of this defense at trial. The first mention of this defense is found in defendants' post-trial memorandum, and the first time it was squarely raised was on appeal.

■ Generally, we will not reach the merits of an issue not considered by the district court. *Pierre v. United States*, 525

F.2d 933 (5th Cir. 1976). Although we recognize exceptions to this general rule and occasionally consider issues not raised at trial, *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976), we find it inappropriate to make an exception in this case because such a ruling would unduly prejudice the plaintiff.

Even though 9–504 is an affirmative defense, it is accorded a different treatment than other affirmative defenses. Once it is raised, the majority of courts have held that the creditor has the burden of establishing that the disposition of the collateral was commercially reasonable. *See, e. g., United States v. Willis*, 593 F.2d 247 (6th Cir. 1979).

In the case at bar, plaintiff proceeded to trial pursuant to a pre-trial order which stated the contested issues of fact to be:

1. The reasonable value of aircraft N45516 at the time the Small Business Administration released its lien thereon.

2. Whether the Small Business Administration's release of its lien on aircraft N45516 was unreasonable and unjustifiable.

Further, at the beginning of the trial the following colloquy occurred:

THE COURT: What do we have, really, to try in this case other than the value of that airplane?

[Plaintiff's Counsel]: That is basically it.

THE COURT: There is no dispute that the note was made, there is no dispute that the SBA relinquished its lien?

[Plaintiff's Counsel]: No, sir.

THE COURT: So it seems the only question is how much was the aircraft worth at the time that the government, or the SBA, released its lien.

[Defendants' Counsel]: I believe that is correct, your honor.

THE COURT: All right. Let's go.

Had the plaintiff been aware that it was expected to litigate the issue of commercial reasonability of the release of its lien, the

---

**3.** Since Dreyer is liable in his individual capacity, we need not consider whether he would be discharged under the guaranty agreement.

presentation of evidence may well have taken a different tack. It would be manifestly unjust to glean this record for kernels of support for the now claimed 9–504 defense when the plaintiff had no opportunity to winnow its own offerings. We decline to consider a defense under 9–504.

Appellants' final theory is novel. They argue that the debtor has an interest in the lien held by the creditor and that the creditor's secured position inures to the benefit of the debtor. Based on this premise, appellants appear to contend that a creditor must not relinquish its lien position unless it receives a sum equal to the fair market value of the property subject to the lien. The argument is ingenious, but we refuse to decide the case on that basis. Such a holding would create new rights and liabilities between creditors, debtors, and guarantors, and would have broad ramifications in the field of commercial paper and secured transactions. That expansion of the UCC is the prerogative of legislators and those to whom the UCC is entrusted. We defer.

The decision of the district court is AFFIRMED.