In re I.A. DURBIN, INC., Debtor.

JEFFERSON NATIONAL BANK, a national banking association, Plaintiff,

v.

I.A. DURBIN, INC., a Florida corporation, and Betty D. Kail, Defendants.

Bankruptcy No. 84–01337–BKC–SMW.
Adv. No. 84–0436–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

May 28, 1985.

Herbert Stettin and Paul Friedman, Miami, Fla., for plaintiff Jefferson Nat. Bank.

Roba W. Theus, II, Miami, Fla., for Defendant I.A. Durbin, Inc.

Marc Birnbaum, Miami, Fla., for defendant Betty D. Kail.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard upon a complaint filed by Jefferson National Bank. The action was originally brought in the Circuit Court of Broward County, Florida, and thereafter removed to this Court pursuant to 28 U.S.C. Section 1452 (a), and Bankruptcy Rule 9027. It seeks recovery upon a promissory note, replevin of certain model home furniture, and foreclosure of a mortgage on real estate. The Defendants answered and counterclaimed, seeking damages arising from a pre-petition writ of replevin obtained by the Bank from the state court. The Court having examined the evidence presented, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

I.A. Durbin, Inc., (Durbin) is a voluntary Chapter 11 debtor in possession, engaged in the construction and sale of single family homes in Broward County, Florida. Betty D. Kail (Kail) is its President and sole stockholder. She operates the company.

In early 1984, Durbin was in need of additional financing to continue its business activities. Durbin had been financing its operations by real estate loans on the property being developed, and by borrowing from American Bank of Hollywood. That bank held a security interest in a "collateral package" of property owned by Durbin.

In early 1984, Kail approached Jefferson to borrow $500,000.00 to be secured by the "collateral package", including second mortgages on model homes owned by Durbin, a lien upon the model home furnishings, an assignment of purchase money mortgages held by Durbin, and an assignment of one-half the closing proceeds from house sale contracts held by Durbin. Jefferson agreed to make the loan, provided Kail personally obligated herself and collateralized her promise by a second mortgage upon her personal residence. She agreed to this and the loan closed on March 30, 1984.

After a careful review of the document, the Court finds the $500,000.00 promissory note was executed by Durbin and Kail as co-makers. The proceeds were paid to Durbin and Kail, and although deposited into Durbin's account, were used in part to pay debt upon which Kail was personally obligated. Each maker received direct benefits from the loan.

At the loan closing Jefferson received a mortgage lien upon the Durbin and Kail real estate, and a security interest in the Durbin purchase money mortgages, the

model home furniture, and the contract receivables. Each lien was properly perfected except as to the contract receivables. No financing statement was filed to perfect a security interest in this class of collateral at the request of Durbin because it was claimed this would constitute impermissible secondary financing under Durbin's construction mortgages. Based upon the testimony concerning this issue, the Court finds that Jefferson did not perfect a security interest in the contract receivables because of Durbin's and Kail's request, although it was intended that Jefferson have such a lien, for Durbin did pay the bank one-half the net closing proceeds from the few closings that did occur prior to the petition initiating these proceedings.

Durbin was represented at the closing by its corporate attorney of 18 years. He reviewed and handled the recording of all the loan documentation and he obtained a mortgagee's title policy in favor of Jefferson on all the real estate. He was Mrs. Kail's brother-in-law. Mrs. Kail claimed at trial she was not represented by counsel. The Court rejects this claim and finds the attorney represented Mrs. Kail's interests and those of Durbin at the closing, and that she was aware of and consented to the Jefferson mortgage placed upon her home.

Durbin defaulted on the Jefferson note in May, 1984, when it ceased all business operations. The principal balance due under the note at that time was $450,543.55. As provided in the note, interest has accrued at 18%.

In July, 1984, Jefferson commenced an action in the Circuit Court of Broward County. By Memorandum Opinion containing Findings of Fact and Conclusions of Law upon Order to Show Cause, dated September 10, 1984, the Bankruptcy Court determined the writ of replevin obtained by Jefferson in that Circuit Court proceeding (the instant case by removal) had been properly obtained, issued and served. Further, that order expressly upheld the constitutionality of the Florida replevin statute authorizing the issuance of a pre-judgment writ of replevin. That Memorandum Opinion has not been overruled or limited in any manner by later proceedings and will not be relitigated in this adversary proceeding. The District Court has recently reached the same conclusion in Case No. 85–6903, lately pending in the United States District Court for the Southern District of Florida, styled I.A. Durbin and Betty D. Kail v. Jefferson National Bank, et al.

■ In summary, Jefferson proved by sufficient, competent evidence each of the matters alleged in its complaint concerning the liability of Durbin and Kail on the $500,000.00 promissory note, the right to replevin the model home furniture, and the foreclosure of the mortgage on Mrs. Kail's residence, and the Court has retained jurisdiction to determine the attorneys' fees and costs due Jefferson under the note and mortgage.

■ The Court has reviewed the various pleadings filed in connection with this matter, and finds the defenses pled by Durbin and joined in by Kail were not proven. The Jefferson complaint states claims upon which relief can be granted. The Court further finds there was no competent evidence, either directly or through proffer, to support the affirmative defenses of unclean hands, prevention or hindrance of Durbin's ability to perform, unjustifiable impairment of collateral by unlawful repossession, and abandonment of the foreclosure action.

Mrs. Kail filed a separate affirmative defense that Jefferson had unjustifiably impaired part of the collateral, thereby entitling Kail and Durbin to a credit for the value of that collateral. This defense is apparently premised upon the failure of Jefferson to perfect a security interest in the contract receivables, and is asserted by Mrs. Kail, pursuant to § 673.606(1)(b) Fla. Stat., as an accommodation maker. For the reasons which follow, this defense is insufficient both as a matter of fact and law.

■ Earlier in these findings the Court determined Durbin and Kail requested Jefferson not to perfect this lien. Even if it

be assumed the debtor-in-possession is not estopped to raise this issue, that clearly is not the case as to Mrs. Kail. She cannot complain of Jefferson's failure to perfect because she induced them not to do so. *Hochfelder v. Ernst & Ernst*, 503 F.2d 1100 (7th Cir.1974) certiorari granted, 421 U.S. 909, 95 S.Ct. 1557, 43 L.Ed.2d 773.

"It is a rule of fundamental fairness whereby a party is precluded from benefitting from his own inconsistent conduct which has induced reliance to the detriment of another. That is, where a plaintiff has, with knowledge of the facts, initially conducted himself in a particular fashion, he cannot thereafter assume a position inconsistent with such conduct to the detriment of a defendant who has acted in material reliance upon that conduct." 503 F.2d at 1118.

Additionally, even if it is assumed the bank's failure to perfect a security interest in the contract receivables of Durbin was an unjustifiable impairment of collateral, as provided by § 673.606(1)(b), Fla. Stat., there was no competent evidence at trial to prove the amount of impairment claimed. Damages for unjustifiable impairment is a question of fact to be proven as any other fact. *Lyons v. Citizens Commercial Bank*, 443 So.2d 229 (Fla. 1st DCA 1983). Failure to do so will bar any relief. *Lyons, supra.* Kail claims the bank's failure to perfect resulted in a substantial portion of the collateral being lost. The evidence did not prove any loss resulted from the bank's actions. It reflects that the contract receivables in question were nothing more than contracts between home buyers and Durbin for the construction of homes. Any net profit from these contracts due Durbin would not be known or realized until the closing had occurred. This means that in fact there is no sum of money due Durbin until and unless it finished the home, built it at a profit, and closed with the buyer. Durbin prevented these events from occurring when it ceased operations in May, 1984, some two months prior to the petition initiating these proceedings. There was no evidence presented to show how much it would cost to complete these homes, the net amount due Durbin after payment of increased construction costs and liens, or indeed, whether any of these contracts still exist after the passage of so much time. The Court should not and will not speculate on what might have been the amount of net profit if the closings had occurred as originally scheduled where the failure to close was the fault of Durbin.

A final and equally conclusive reason why the unjustifiable impairment of collateral defense of Mrs. Kail fails is that, because she is a co-maker on the note in question, the defense is not available to her. Both a maker, who engages that he will pay the note according to its tenor (§ 673.413(1), Fla.Stat.), and an accommodation maker, who signs the note in order to lend his name to the maker, (§ 673.415, Fla.Stat.), are normally liable to the payee. Section 673.415(2), Fla.Stat.; *Gehrig v. Ray*, 332 So.2d 703 (Fla. 1st DCA 1976). However, as a surety, an accommodation maker has the right to release from his obligation to the extent he can show an impairment of collateral. This defense is not available to a maker because:

"The words 'any party to the instrument' remove an uncertainty arising under the original section [of the Uniform Negotiable Instruments Law]. The suretyship defenses here provided are not limited to parties who are 'secondarily liable', but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so." (at page 231).

Official Comment to § 3.606 of the Uniform Commercial Code. See also *Lyons v. Citizens Commercial Bank, supra.* It appears from this Code comment the intention of the drafters was to permit relief to a person, who, having a right of subrogation against the maker, could prove his rights were prejudiced by the payee's release of the maker or impairment of the

maker's collateral otherwise available to pay the obligation.

■ The better reasoned opinions on this subject wholly support this view. In *United States v. Unum, Inc.*, 658 F.2d 300 (5th Cir.1981), the Fifth Circuit ruled a maker could not invoke § 3.606(1)(b) of the Uniform Commercial Code, and that only a surety could do so. Its reasoning was:

"This interpretation of 3–606 is soundly based. The maker of a note is always primarily responsible for the debt with no recourse except against co-makers. Sureties, whether accommodation makers or endorsers, are only secondarily liable; they retain a right of recourse against the primary obligor. White & Summers, Uniform Commercial Code § 13–12, at 426 (1972). Fairness dictates that if the risk a surety has agreed to undertake is increased through impairment of the securing collateral by the person to whom payment is due, the surety should be discharged to the extent of the impairment."

658 F.2d at pp. 304–305. Because co-makers of notes retain only the right to contribution between themselves, and are not entitled to subrogation to the rights of the payee, or to release upon release of a co-maker, it follows that a co-maker cannot complain of the release of collateral of a co-maker as he continues to owe an independent duty to the payee which is not discharged until payment in full, or express release is granted. Additional authorities expressing the view that § 3.606(1)(b) of the Uniform Commercial Code provides a remedy only to sureties and not to makers include *Hooper v. Ryan*, 581 S.W.2d 237 (Tex.Civ.App.1979); *Wohlhuter v. St. Charles Lbr. & Fuel Co.*, 62 Ill.2d 16, 338 N.E.2d 179 (1975); *Hallowell v. Turner*, 95 Idaho 392, 509 P.2d 1313 (1973); and *Commerce National Bank v. Baron*, 336 F.Supp. 1125 (E.D.Pa.1971). Contra, see *Southwest Florida Production Credit Association v. Schirow*, 388 So.2d 338 (Fla. 4th DCA 1980).

■ By post trial memorandum, Mrs. Kail raised the additional defense that Jefferson, having security interests and mortgage lien rights against other properties of Durbin, should be compelled by the doctrine of marshalling of assets to look to the other collateral before resort to the mortgage on her residence. The reliance on this theory is entirely misplaced because only a creditor may seek to force another creditor to look to another fund to satisfy his debt. *SAC Const. Co. v. Eagle National Bank*, 449 So.2d 301 (Fla. 3rd DCA, 1984). As Kail is a debtor, not a creditor, she has no right to seek this relief.

There was no competent evidence presented at trial by Durbin and Kail, as counterclaimants, in support of their counterclaims. No proofs were introduced as to these claims, all of which arose out of the service of the writ of replevin and upon which the Court has already ruled, that Jefferson trespassed as to their real or personal property, converted or civilly stole their property, or interfered with their business or contractual relationships. The Court notes, parenthetically, that even if such proofs had been adduced, there was no evidence of damages.

■ The Court further concludes that Mrs. Kail consented to the jurisdiction of this Court by the removal of these proceedings and by her joinder in the answer and counterclaim.

In conclusion, the Court finds:

1. The Court has jurisdiction over Jefferson, Durbin and Mrs. Kail and of the subject matter of this adversary proceeding and the counterclaims as core proceedings as provided by 28 U.S.C. § 157(b)(1) and (2).

2. In the event it is determined the proceedings involving Mrs. Kail are non-core proceedings, that are otherwise related to a case under Title 11, it herewith submits these findings and conclusions as proposed findings of fact and conclusions of law to the district court, as provided by 28 U.S.C., § 157(c).

3. I.A. Durbin, Inc. and Betty D. Kail are indebted to Jefferson National Bank in the sum of $450,543.55 principal, together with interest at the rate of 18% from June

1, 1984, to May 20, 1985, in the sum of $78,783.45. The per diem interest figure from and after May 21, 1985, is $222.19.

4. The Court retains jurisdiction of this matter for the purpose of awarding Jefferson reasonable attorneys' fees and costs.

5. Jefferson is entitled to the immediate redelivery to it of the model home furniture and furnishings described in the Sheriff of Broward County's return previously filed.

6. Jefferson is entitled to a final judgment of foreclosure of its mortgage lien against the following described real property:

Lot 3, in Block 63, Hollywood Hills North, Section One, according to the Plat thereof, as recorded in Plat Book 66, page 20, of the Public Records of Broward County, Florida.

Accordingly, if Betty D. Kail fails to pay all sums due Jefferson as provided herein within fifteen (15) days, the property described above shall be ordered sold and the proceeds disbursed as provided by law.

7. The defendants have failed to establish any of their defenses, affirmative defenses and counterclaims. Jefferson is entitled to judgment on these issues as a matter of law.

8. Under even date the Court will enter a separate final judgment as provided by Rule 9021(a) of the Rules of Bankruptcy Procedure.

9. In the event it is determined that Betty D. Kail did not consent to the jurisdiction of this Court, under even date, the Court will enter separate recommendations as to final judgment against Betty D. Kail, as provided by 28 U.S.C. § 157(c)(1).