860 F.2d 896
 7 UCC Rep.Serv.2d 817
 GREAT SOUTHWEST LIFE INSURANCE CO., a Texas corporation, Plaintiff,
and
United States of America, acting through the Small Business
Administration, Counter-claimant-Appellee,
v.
Darlene FRAZIER, a widowed woman, the Estate of Fred M.
Frazier; Darlene Frazier, as Personal Representative of the
Estate of Fred M. Frazier, deceased; and any and all
unknown heirs or devisees of Fred M. Frazier,
Defendant-cross-defendant-Appellant.
 No. 87-3966.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1988.
Decided Oct. 26, 1988.
 
 Frank J. Dykas, Boise, Idaho, for defendant-cross-defendant-appellant.
 Jeffrey W. Ring, Asst. U.S. Atty., Boise, Idaho, for counter-claimant-appellee.
 Appeal from the United States District Court for the District of Idaho.
 Before FLETCHER, and REINHARDT,* Circuit Judges, and GEORGE,** District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Darlene Frazier, mortgagor, appeals the district court's finding that the Small Business Administration ("the SBA"), second mortgagee, is entitled to a deficiency judgment against her for the balance of her SBA loan after the sale of collateral. Frazier contends that under Idaho law the SBA is barred from obtaining a deficiency judgment. She asserts defenses of impairment of collateral, estoppel, violation of agency procedures, and breaches of good faith and fair dealing, inter alia.
 
 
 2
 Because we find that the impairment of collateral defense is not available to the co-maker of a note given for an SBA loan, we affirm the deficiency judgment of $503,718.64 against Frazier.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Darlene Frazier and her deceased husband, Fred M. Frazier, mortgaged their 7,420 acre ranch in Blaine County, Idaho to Great Southwest Life Insurance Company for $1,263,000 in May 1978. The Fraziers gave the SBA a second mortgage on the same property on August 28, 1979, as security for a loan of $449,000 under the SBA disaster loan program. Both Fred and Darlene Frazier signed the note to the SBA. After Fred Frazier's death in 1980 Darlene Frazier continued to make annual payments to the SBA through November 1982 but thereafter defaulted. In December 1983 Great Southwest initiated a foreclosure action against Darlene Frazier, individually and as the Personal Representative of the Estate of Fred M. Frazier ("Frazier"), in Idaho state court and named the SBA, a junior lien holder, as a co-defendant. The SBA cross-claimed against Frazier for foreclosure of its mortgage and a deficiency judgment, and removed the action to federal district court.
 
 
 4
 Great Southwest's claims were settled in the course of a complicated swap of deeds in lieu of foreclosure. Following its purchase in 1977 the ranch had been variously valued--as shown by appraisals and purchase offers--at between $1.7 and $1.9 million. By 1985, however, in the wake of Fred Frazier's death, the subsequent failure of the ranch operation, and a statewide drop in land values, all the parties apparently agreed that the ranch's value had plummeted. When Great Southwest offered to trade clear title of 120 acres of the total to the SBA in exchange for the SBA's second mortgage rights to the remainder, the SBA agreed without even considering making a counter offer or performing an appraisal to determine the property's fair market value (FMV). Frazier agreed to the exchange and signed and delivered to Great Southwest a deed in lieu of foreclosure for the 7,300 acre parcel, obtaining in exchange its relinquishment of any rights to a deficiency judgment. Frazier contends, and the SBA disputes, that the SBA also had agreed to relinquish its rights to a deficiency judgment in exchange for title to the 120 acre parcel. When the SBA failed to so stipulate--after Great Southwest's documents were already recorded--Frazier refused to sign the deed conveying Frazier's title to the 120 acre parcel to the SBA. When the dust settled, Great Southwest had received title to all but 120 acres of the ranch, clear of any claim to title by Frazier or lien by the SBA, in exchange for a full release to Frazier of her indebtedness to it and a release of its lien on the 120 acres; the SBA held a first deed of trust on the 120 acres; and Frazier retained title to the 120 acres, subject to the SBA's lien, and owed the SBA $503,718.64, including interest.
 
 
 5
 The SBA subsequently sought foreclosure on the 120 acre parcel and a deficiency judgment for the remainder of the debt. Frazier conceded the government's right to foreclose its deed of trust, but challenged the SBA's entitlement to a deficiency judgment on the ground that the SBA impaired its collateral by agreeing to the swap with Great Southwest. On February 9, 1987, following a bench trial, the district court found the 120 acre parcel's fair market value to be $30,000 and entered a judgment of $503,718.64 against Frazier that entitled the SBA to realize on any deficiency after sale of the parcel.[1] The district court, in finding the SBA entitled to a deficiency judgment, also found that the SBA did not waive its right to a deficiency judgment and that the SBA did not depreciate (impair) the value of the Frazier's collateral. The court assumed arguendo that Idaho law governed the case. This appeal followed. Frazier's appeal lies solely against the SBA.
 
 DISCUSSION
 
 6
 On appeal Frazier has renewed her defense that the SBA impaired her collateral. She has also substituted an estoppel defense in place of the waiver defense, and has raised several other defenses for the first time on appeal. Specifically, Frazier now argues that the SBA violated agency procedures in not appraising the property; that it violated a contractual duty of good faith and fair dealing; that it violated its congressional mandate "to help, not hurt, small business in the administration of its programs"; that it violated Idaho's "one action" rule requiring full exhaustion of the security before proceeding against the debtor's personal assets; and that the amount of the deficiency judgment must be computed as the combination of the first and second mortgages less the fair market value of the entire property. The SBA counters that Frazier waived her state law defenses and that the other new defenses should not be entertained.
 
 
 7
 I. Applicability of Idaho Commercial Law to SBA Transactions
 
 
 8
 Frazier's central defense against imposition of the deficiency judgment is that the SBA impaired its collateral by exchanging a valuable second mortgage on the full acreage for a paltry first mortgage on the 120 acre parcel. This defense rests in turn on accepting her contention that the rights of the parties under an SBA loan agreement are determined by reference to state law.
 
 
 9
 Idaho Code Sec. 28-3-606(1)(b) (1980) governs impairment of collateral by the holder of a note. It provides in pertinent part:
 
 
 10
 The holder discharges any party to the instrument to the extent that without such party's consent the holder ... unjustifiably impairs any collateral for the instrument given by ... the party....
 
 
 11
 The Idaho Code defines "party" as "a person who has engaged in a transaction or made an agreement within this act." Idaho Code Sec. 28-1-201(29) (1980). These provisions are identical to Uniform Commercial Code Secs. 3-606 and 1-201(29).
 
 
 12
 The SBA contends that federal, not state, law governs SBA loans, so that Idaho state law defenses are unavailable. The truth lies somewhere in between. It is true that federal law governs questions arising under the SBA, a nationwide federal program. Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); see also 13 C.F.R. Sec. 101.2(d)(2).[2] But as the Supreme Court explained in Clearfield Trust, "[i]n the absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards." 318 U.S. at 367, 63 S.Ct. at 575; United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Unless there is an overriding federal interest in uniformity, the applicable state law provides the rule of decision. United States v. Yazell, 382 U.S. 341, 348-49, 86 S.Ct. 500, 504-05, 15 L.Ed.2d 404 (1966).
 
 
 13
 In deciding whether to adopt state law or to fashion a nationwide federal rule, Kimbell Foods requires us to consider two factors in addition to a need for uniformity: 1) whether adopting the state law would frustrate the specific objectives of the SBA; and 2) whether applying a federal rule would disrupt commercial relations predicated on state law. 440 U.S. at 728-29, 99 S.Ct. at 1458-59. Quite specifically, Kimbell Foods encourages adoption of state U.C.C. provisions: "Because the state commercial codes 'furnish convenient solutions in no way inconsistent with adequate protection of the federal interest[s]' ... we decline to override intricate state laws of general applicability on which private creditors base their daily commercial transactions." 440 U.S. at 729, 99 S.Ct. at 1459 (citation omitted).
 
 
 14
 Several circuits accordingly have adopted state U.C.C. provisions as the federal common law rule in SBA loan cases. See Wainright Bank & Trust Co. v. Railroadmens Fed. Sav. & Loan Ass'n, 806 F.2d 146 (7th Cir.1986) (Indiana U.C.C. commercial reasonableness provision applicable to SBA disposition of collateral); United States v. Kukowski, 735 F.2d 1057 (8th Cir.1984) (adopting North Dakota U.C.C. provisions regarding waivability of guarantor's right to notice of intended disposition of collateral); United States v. H. & S. Realty Co., 837 F.2d 1 (1st Cir.1987), aff'g 647 F.Supp. 1415, 1419 (D. Maine 1986) (adopting waivability of guarantor's right under Maine U.C.C. to commercially reasonable sale of collateral); United States v. Lattauzio, 748 F.2d 559 (10th Cir.1984) (same under New Mexico U.C.C.); United States v. New Mexico Landscaping, Inc., 785 F.2d 843, 845 (10th Cir.1986) (same).
 
 
 15
 At least one circuit court has adopted the state version of U.C.C. Sec. 3-606, the impairment of collateral provision at issue here, as the "governing rule" when resolving a claim involving the SBA loan guaranty program. United States v. Unum, 658 F.2d 300, 304 (5th Cir.1981); see also United States v. Meadors, 753 F.2d 590, 592, 594 (7th Cir.1985) (indicating state rule should be adopted for impairment of collateral but finding the defense waived). The facts of Unum are very similar to those before us. When the SBA brought an action to collect the balance due on a promissory note, the Unum defendants contended that the SBA's release of its lien on an aircraft for only $1000, when no one knew the plane's FMV at the time, had impaired their collateral.[3] Pointing out that "[i]f the effectiveness of a federal program depends upon the application of a uniform rule, varying state rules should not be employed," the Unum court "accept[ed] the U.C.C., as supplemented by decisions construing various aspects of commercial law, as the rule of decision." The Third Circuit followed the logic of Unum in FDIC v. Blue Rock Shopping Center, Inc., 766 F.2d 744, 748-49 (3d Cir.1985), finding U.C.C. Sec. 3-606(1)(b) to "interstitially" provide the federal rule in an action the FDIC brought to recover a loan bond and warrant.
 
 
 16
 Our circuit's SBA cases do not compel a contrary result. In the three cases decided since Kimbell Foods, analysis of the balance between federal and state interests has led to our adoption of state law as the federal rule. Dupnik v. United States, 848 F.2d 1476 (9th Cir.1988) (adopting Arizona notice requirement for redemption of property after foreclosure sale); United States v. Pastos, 781 F.2d747 (9th Cir.1979) (adopting Montana statutes regarding mortgagors' right of redemption); United States v. Crain, 589 F.2d 996 (9th Cir.1979) (adopting Arizona common law doctrine of equitable subrogation). In none of those opinions were we presented with uniformity in the form of a state U.C.C. statute, adoption of which, under Kimbell Foods, furthers both federal and state interests. Thus, the instant case presents an even stronger argument for adoption of state law.
 
 
 17
 We reject the SBA's contention that United States v. Gish, 559 F.2d 572 (9th Cir.1977), should control. In Gish, we allowed the SBA to recover a deficiency judgment following a nonjudicial foreclosure sale under circumstances where Alaska law would have denied recovery. We decided that the need for nationwide uniformity compelled a federal rule allowing the SBA to recover deficiencies and that the Alaska rule was a "local immunity" which the debtors were prevented from asserting by terms of the deed of trust. 559 F.2d at 574-75. Gish essentially has been overruled by Kimbell Foods, which found that SBA loan administration could tolerate some variations in state law, 440 U.S. at 729, 99 S.Ct. at 1459, and is distinguishable, in any event, from this case because the Alaska law at issue in Gish was not a uniform code provision, but rather was an anomalous state rule treating foreclosures of mortgages differently from foreclosures of deeds of trust.
 
 
 18
 We conclude, therefore, that the Idaho impairment of collateral statute provides a federal rule for SBA loan transactions.
 
 
 19
 II. Availability of Collateral Impairment Defense to Maker of the Note
 
 
 20
 Despite our adoption of Idaho's impairment of collateral provision as the federal rule, this defense fails Frazier because she is the "maker of the note."
 
 
 21
 The vast majority of state courts hold and commentators agree that the term "any party" in Uniform Commercial Code Sec. 3-606 (Idaho Code Sec. 28-3-606) is limited to "any party who is in the position of a surety, having a right of recourse ...," and does not include a maker of the note. See Official Comment 1 to U.C.C. Sec. 3-606[4]; FDIC v. Blue Rock Shopping Center, 766 F.2d at 749-51; United States v. Vahlco Corp., 720 F.2d 885, 890 (5th Cir.1983); United States v. Unum, 658 F.2d at 304; In re I.A. Durbin, Inc., 49 B.R. 528, 531-32 (Bankr.S.D.Fla.1985), aff'd on other grounds, 62 B.R. 139 (S.D.Fla.1986); Anderson, 6 Uniform Commercial Code Sec. 3-606:4 at 563 (3d ed. 1984); Annotation, Who is Party Discharged on Negotiable Instrument to Extent of Holder's Unjustifiable Impairment of Collateral, Under U.C.C. Sec. 3-606(1)(b), 93 A.L.R.3d 1283 (1979 & Supp.1988). States so holding include Idaho's neighbors, Oregon, Oregon Bank v. Baardson, 256 Or. 454, 473 P.2d 1015 (1970), and Montana, El-Ce Storms Trust v. Svetahor, 724 P.2d 704 (Mont.1986). Notable exceptions are Arkansas, Farmers & Merchants Bank v. Poe, 19 Ark.App. 151, 718 S.W.2d 457 (1986); Missouri, Bishop v. United Missouri Bank of Carthage, 647 S.W.2d 625, 629 (Mo.App.1983); and possibly Florida. See Southwest Florida Prod. Credit Ass'n v. Schirow, 388 So.2d 338 (Fla.Dist.Ct.App.1980); but see Lyons v. Citizens Commercial Bank, 443 So.2d 229 (Fla.Dist.Ct.App.1983) (limiting Schirow to include accommodation makers, not co-makers).
 
 
 22
 Idaho has no law directly on this point; however, related cases indicate it would follow the majority of states. In Hallowell v. Turner, 95 Idaho 392, 509 P.2d 1313 (1973), the Idaho Supreme Court interpreted Idaho Code Sec. 28-3-606 to deny discharge of liability to a maker of a note whose co-maker had entered into an "agreement not to execute" with the holder. However, the decision turned on the validity of the holder's express reservation of rights against the remaining maker, not on whether that maker was a surety or accommodation maker. 509 P.2d at 1315-16. In First Sec. Bank of Idaho v. Mountain View Equip. Co., 112 Idaho 158, 730 P.2d 1078 (Idaho Ct.App.1986), aff'd on other grounds, 112 Idaho 1078, 739 P.2d 377 (Idaho 1987), an appellate court cited Idaho Code Sec. 28-3-606 for the proposition that "[g]enerally, a secured creditor has an obligation to avoid harming the interests of a guarantor," from which we may infer that the provision's protections were intended for guarantors, not makers. Regardless, uncertainty as to Idaho's law should be resolved in favor of the overwhelming majority's rule, in furtherance of the goals of administering federal programs uniformly and accommodating the expectations on which private parties' commercial relationships are based. Kimbell Foods, 440 U.S. at 728-29, 99 S.Ct. at 1458-59. Thus we conclude the Idaho rule, adopted here as the federal rule, is that a co-maker of a note cannot assert the impairment of collateral defense.
 
 
 23
 Frazier contends that she should nevertheless be able to invoke the impairment of collateral defense because she was an accommodation maker, rather than a co-maker, of the note. This argument fails.
 
 
 24
 Frazier is correct in asserting that U.C.C. Sec. 3-603(1)(b), as interpreted by most states and by federal courts adopting it as the federal rule, includes accommodation maker in the definition of "any party." See, e.g., United States v. Unum, 658 F.2d at 304-05; FDIC v. Blue Rock Shopping Center, Inc., 766 F.2d at 749; In re I.A. Durbin, 49 B.R. at 531-32 and cases cited therein; cases cited in 93 A.L.R. 3d 1283 (1979 & Supp.1988). A maker is an accommodation maker if he or she signed a note to accommodate the primary obligor, and is in the position of a surety, having a right of recourse against the maker. Blue Rock, 766 F.2d at 749.
 
 
 25
 Darlene Frazier was not an accommodation maker. The signature block on the SBA loan note indicates that Fred M. Frazier and Darlene Frazier signed "both individually and as husband and wife." The language on the face of the note form, typed in block capitals (i.e., not simply part of the printed form), is unequivocal:
 
 
 26
 It is understood and agreed and the undersigned parties each separately and specifically acknowledge that the loan above referred to is intended for, and will in fact be of benefit to not only any community estate of the undersigned parties, but also to the separate estate of each, and that a wife executing this agreement is not doing so merely as an accommodation or convenience to the community. In further acknowledgment of the foregoing, the undersigned parties each separately and specifically agree that any and all property now held or hereafter acquired, held or to be held by said parties, separately, jointly, or in community, will be liable for the principal, interest and other legal charges of the loan hereby represented in the event of default on said loan, and it is on the basis of the representation herein contained that said loan is disbursed by the SBA.
 
 
 27
 Adopting Idaho's statute as the federal rule, we find that Frazier, as a co-maker of the note, cannot assert an impairment of collateral defense. Accordingly, we do not reach the issue of whether the SBA in fact did impair its collateral.
 
 III. Waiver of State Law Defenses
 
 28
 The SBA makes an untenable argument that compels us to respond. It contends that contractual provisions in the note Frazier originally signed constitute a specific waiver of any defense based on the SBA's duty with respect to the collateral (e.g., impairment). If Frazier had waived that defense, her status as a co-maker of the note, and the alleged impairment, would be immaterial.
 
 
 29
 The SBA standard promissory note form signed by Frazier contained the following printed language:
 
 
 30
 Upon the nonpayment of the indebtedness, or any part thereof, when due, whether by acceleration or otherwise, Holder is empowered to sell, assign, and deliver the whole or any part of the Collateral.... The undersigned hereby waives all right of redemption or appraisement whether before or after sale.
 
 
 31
 Holder is further empowered, ... to surrender, compromise, release, renew, extend, exchange, or substitute any item of the Collateral in transactions with the undersigned or any third party ... without prior notice to or consent of the undersigned or any assignee.
 
 
 32
 The undersigned agrees to take all necessary steps to administer, supervise, preserve, and protect the collateral; and regardless of any action taken by Holder, there shall be no duty upon Holder in this respect.
 
 The mortgage reads in relevant part:
 
 33
 In the event said property is sold at a judicial foreclosure sale or pursuant to the power of sale hereinabove granted, and the proceeds are not sufficient to pay the total indebtedness secured by this instrument and evidenced by said promissory note, the mortgagee will be entitled to a deficiency judgment for the amount of deficiency without regard to appraisement.
 
 
 34
 The SBA contends that these provisions bind Frazier to accept imposition of a deficiency judgment regardless of the SBA's treatment of the collateral. The SBA also claims that the governing federal rule is provided by 13 C.F.R. Sec. 101.1(d)(4) (1988), which prohibits loan recipients from invoking any "local immunity."[5] It argues that Frazier cannot assert the impairment of collateral defense, Idaho Code Sec. 28-3-606, because this is a "local immunity."We reject the SBA's waiver arguments for two reasons. First, because we adopt Idaho Code Sec. 28-3-606 here as federal law for SBA loans, impairment of collateral is a federal defense, not a "local immunity." Neither the contract provisions nor the regulations provide the rule for this case. See United States v. Crain, 589 F.2d 996, 999 n. 2 (9th Cir.1979) ("The regulations do not indicate what the applicable federal law is. Finally, despite the fact that some of the contractual provisions in the case may arguably waive the Crains' state law defenses, they do not rise to the force of federal law and do not foreclose the question of what the federal rule is.").
 
 
 35
 Furthermore, we are guided by United States v. Pastos, 781 F.2d 747 (9th Cir.1986), and United States v. Crain, 589 F.2d 996, to reject the argument that a printed form waiver should be binding. We noted in Pastos that the Pastos's loan contained an express waiver of redemption rights, but determined that "the critical factor is the balance between federal and state interests" and held that "state redemption laws apply to SBA loans even when the loan contains an express waiver of redemption rights." 781 F.2d at 752. Here, as discussed above, the balance tips in favor of adopting U.C.C. debtor defenses. We also observe that the waiver provisions in Frazier's note, as in Pastos and Crain, were part of the non-negotiated "boilerplate" printed language of the standard SBA note form. See Pastos, 781 F.2d at 752; Crain, 589 F.2d at 998. Both Pastos and Crain distinguished and declined to follow United States v. Gish, which we also find inapposite since in Gish, in contrast to this case, the waiver was a typewritten insert to the loan form. 559 F.2d at 573.
 
 IV. Estoppel
 
 36
 Frazier asserts that the SBA is estopped from bringing a deficiency judgment against her for the balance of her debt because it induced her to act to her detriment (in transferring title to Great Southwest) on the assumption that no deficiency would be asserted by the SBA. This defense is not available to her. Estoppel is an affirmative defense that must be pleaded. Fed.R.Civ.P. 8(c). Because Frazier first raised the issue in her brief on appeal, we are not required to entertain it. Harbeson v. Parke Davis, Inc., 746 F.2d 517, 520 (9th Cir.1984).
 
 
 37
 Somewhat extraordinarily, Frazier has not appealed the district court's factual finding that the SBA did not waive its right to a deficiency judgment. She has instead substituted on appeal an estoppel defense for the waiver defense asserted in the district court. In consequence, the question of whether the SBA ever in fact represented to Frazier that it would take title to 120 acres and not seek a deficiency judgment is not before this court. Although a central factual issue in the bench trial, and a major element of the appellate briefs' statements of fact, the SBA's original intentions and representations in the property swap are not relevant to the issues remaining on appeal.
 
 V. Agency Procedures Violation
 
 38
 Frazier further argues that the SBA violated its own procedures by releasing its second mortgage to a substantial portion of the ranch without first conducting an appraisal of the FMV, as required by its internal operations manual. While it is unfortunate that no appraisal was conducted, the omission does not appear to violate standard procedures.
 
 
 39
 The SBA in reply, quoting from its manual, points to the discretionary, as opposed to mandatory, nature of the recommended procedure: "When the borrower requests a release of collateral, a determination of the need for a special appraisal should be made." The SBA's loan officer conceded that an appraisal should be made in circumstances similar to those at issue here. However, the reasons given by the SBA for its determination that an appraisal would not be conducted are not unreasonable: the agency felt that the time and expense of an appraisal were unjustified, given how little it expected to recover from its second mortgage. Thus we find no procedural violation.VI. Additional Issues First Raised on Appeal
 
 
 40
 Frazier's appellate brief raises for the first time several additional state law defenses. She contends that the SBA's exchange of collateral violated the obligation of good faith and fair dealing implied in every contract. Luzar v. Western Sur. Co., 107 Idaho 693, 692 P.2d 337 (Idaho 1984). She also alleges a violation of Idaho's "one-action" rule requiring full exhaustion of the security before proceeding against the debtor's personal assets, Idaho Code Sec. 6-101 (1979); McCray v. Twitchell, 112 Idaho 787, 735 P.2d 1098 (Idaho Ct.App.1987); and violation of the requirement that the amount of a deficiency judgment be computed as the combination of the first and second mortgages less the fair market value of the entire parcel. Idaho Code Sec. 6-108; Thompson v. Kirsch, 106 Idaho 177, 677 P.2d 490 (Idaho Ct.App.1984). We ordinarily do not consider issues that were not presented to the district court, Andersen v. Cumming, 827 F.2d 1303, 1305 (9th Cir.1987), but may, at our discretion, take exception "when the issue is purely one of law and the necessary facts are fully developed." Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir.1986), cert. denied --- U.S. ----, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987). We find the factual record inadequately developed to warrant consideration of these new defenses.
 
 
 41
 Frazier also raises, for the first time on appeal, an argument that the SBA violated its congressional mandate "to help, not hurt, small business in the administration of its programs." We might have been inclined to consider this allegation in order "to prevent a miscarriage of justice." Id. at 1419. However, consideration of this issue requires understanding the SBA's multiple objectives and purposes, an inquiry that would have benefited from development of facts and briefing by the parties at the trial court level. Absent any persuasive evidence that the SBA misled Frazier, or was out to ruin her, we find that this defense, too, was untimely raised.
 
 CONCLUSION
 
 42
 The district court did not err in finding Frazier liable to the SBA for a deficiency judgment on her defaulted loan after sale of the collateral. We adopt Idaho's impairment of collateral defense as the federal rule in this SBA action, but find it unavailable to Frazier as a co-maker of the SBA note. Thus Frazier cannot avail herself of this defense, despite our finding that she did not waive state law defenses. We also conclude that the failure to appraise the property before releasing collateral did not violate agency procedures. Other defenses raised by Frazier for the first time on appeal will not be entertained.
 
 
 43
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 Hon. Stephen Reinhardt, United States Circuit Judge for the Ninth Circuit has been drawn to replace Hon. J. Blaine Anderson who died after argument and submission of this case
 
 
 **
 Hon. Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation
 
 
 [1]
 The 120 acre parcel was subsequently sold at a marshal's sale for $30,235.33 on April 20, 1987, leaving a deficiency of $481,651.86, including interest accrued as of that date
 
 
 [2]
 Section 101.2(d)(2) states "Instruments evidencing a loan, obligation of security interest in real or personal property payable to or held by the Administration or the Administrator, such as promissory notes, bonds, guaranty agreements, mortgages, deeds of trust, and other evidences of debt or security shall be construed and enforced in accordance with applicable Federal law."
 
 
 [3]
 This defense failed because the Unum court found that Sec. 3-606 did not entitle a maker of a note to invoke it. 658 F.2d at 304
 
 
 [4]
 The Official Comment, which Idaho reproduces in its code, explains:
 "1. The words "any party to the instrument" remove an uncertainty arising under the original section. The suretyship defenses here provided are not limited to parties who are "secondarily liable," but are available to any party who is in the position of a surety, having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so." (emphasis added).
 Idaho Code Sec. 28-3-606, Comment to Official Text.
 
 
 [5]
 13 C.F.R. Sec. 101.1(d)(4) states:
 Any person, corporation, or organization that applies for and receives any benefit or assistance from SBA, or that offers any assurance or security upon which SBA relies for the granting of such benefit or assistance, shall not be entitled to claim or assert any local immunity to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.