**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James D. ELLIS, Defendant-Appellant.**

**No. 82–3409.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1983.

Decided Sept. 1, 1983.

---

Carroll C. Gray, Spokane, Wash., for plaintiff-appellee.

Jerry L. Sorlien, Schillberg, Sorlien & Warring, Moses Lake, Wash., for defendant-appellant.

Before SKOPIL, PREGERSON, and FERGUSON, Circuit Judges.

SKOPIL, Circuit Judge:

During 1976, 1977 and 1978 Ellis obtained direct loans from Farmers Home Administration ("FmHA") under a program to provide financial assistance to farmers who are unable to obtain credit from private lenders on reasonable terms. 7 U.S.C. § 1922. Ellis executed two mortgages on the farm property to secure the loans. Each was embodied in a standard form used by the FmHA with a clause purporting to waive the mortgagor's right to debtor protections under state laws, including the right to redeem following foreclosure sale.

Ellis encountered financial difficulty and was unable to continue repayment of the loans, leaving a balance due of $149,695.75 plus interest.

On April 1, 1981 the FmHA sought foreclosure of the mortgage on the Ellis farm. The district court granted FmHA's motion for summary judgment and ordered the sale of the property to satisfy the debt. The judgment specifically denied Ellis the right to redeem at any time. The district court held that where a mortgage held by the FmHA includes a provision expressly waiving any rights to redemption, federal law does not adopt state law granting rights of redemption. The district court relied principally on *United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 362–67 (9th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

Ellis appeals, seeking a modification of the judgment to provide for redemption rights otherwise available under Washington state law. We reverse.

## DISCUSSION

The rights of the United States against private citizens with whom it has contracted in loan transactions are governed by federal law. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *United States v. Crain,* 589 F.2d 996, 998

(9th Cir.1979); *see United States v. Med O Farm, Inc.,* 701 F.2d 88, 90 (9th Cir.1983). While no federal statute or regulation provides appellant with the redemption rights he is claiming, federal courts may look to other sources in developing federal common law, including the law of the states. *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957); *Crain,* 589 F.2d at 999; *United States v. Best,* 573 F.2d 1095, 1101 (9th Cir.1978). Even when an "action arises under and is clearly determined by federal law, state law limiting the enforcement of a federal right is sometimes adopted as the federal rule." *United States v. Haddon Haciendas Co.,* 541 F.2d 777, 783 (9th Cir.1976).

■ Whether or not state law will be adopted as the federal common law depends on "whether the state law can be given effect without ... conflicting with federal policy." *Crain,* 589 F.2d at 999, (quoting *Haddon Haciendas,* 541 F.2d at 784); *Stadium Apartments,* 425 F.2d at 368. *See United States v. Yazell,* 382 U.S. 341, 352–57, 86 S.Ct. 500, 506–09, 16 L.Ed.2d 404 (1966); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *United States v. MacKenzie,* 510 F.2d 39, 41–42 (9th Cir.1975) (en banc).

■ The government argues that Washington law, which grants debtors a right to redeem within one year of the foreclosure sale,[1] should not be adopted as federal common law in this case. It is urged that recognizing a right of redemption would increase the costs of the FmHA loan programs by chilling bidding at foreclosure sales and requiring the United States to purchase the property and hold it during the redemption period. The government asserts that these added operating costs would defeat the federal policy of maintaining a credit fund available to farmers at reasonable rates.

The fact that increased costs may result from the adoption of state law regarding debtor and creditor rights is not controlling. Both the Supreme Court and this court have adopted state law despite added costs to loan programs when state law did not jeopardize other federal interests. *See, e.g., Kimbell Foods, Inc.,* 440 U.S. at 740, 99 S.Ct. at 1464–65; *Yazell,* 382 U.S. at 352–57, 86 S.Ct. at 506–09; *Crain,* 589 F.2d at 999–1000; *MacKenzie,* 510 F.2d at 42.

*Crain* is particularly instructive in this regard. Harold and Ethel Crain personally guaranteed a Small Business Administration ("SBA") loan made to Haining Lumber Company, Inc. The guarantee provided that the SBA could proceed against the Crains upon default without pursuing any rights it might have against the principal debtor. A clause in the guarantee purported to waive rights under Arizona state law providing that a creditor must first seek satisfaction from the principal debtor. Over the government's assertions that adoption of state law would create additional financial burdens on the loan fund, we required the SBA to proceed first against Haining Lumber Company. 589 F.2d at 1000. Despite the additional costs, we found that adoption of state law was consistent with the overriding purpose behind the Small Business Act, that "the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small business concerns in order to preserve free competitive enterprise ... and to maintain and strengthen the overall economy of the nation." 15 U.S.C. § 631(a). *Id.* at 999–1000 n. 4.

The FmHA loan program at issue here has a similar purpose. The Act authorizing the loans, the Consolidated Farm and Rural Development Act, Pub.L. No. 87–128 Title III, § 301(b), 75 Stat. 307 (1961) (codified at 7 U.S.C. §§ 1921–1992), was intended "to provide for more effective credit services to farmers." 7 U.S.C. § 1921. The Act specifically states that "[i]t is the sense of Congress that, in carrying out the provisions of the [Act] ... a high priority is placed on keeping existing farm operations operating." 7 U.S.C. § 1921 (note). The Consolidated Farm and Rural Development Act is, in the words of the government, a

---

**1.** *See* Wash.Rev.Code Ann. § 6.24.140 (West Supp.1983).

"form of social welfare legislation" for farmers. The obvious purpose of the program is to support the farming segment of the economy, and, particularly relevant here, to help ease the financial burden on farmers when they encounter financial difficulty. *See generally* H.R.Rep. No. 95–986, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. & Ad.News 1106, 1106–22. As in *Crain,* we find that the overriding federal purpose is not adversely affected, and may even be advanced, by adopting state law.

Our conclusion is bolstered by a consideration of the reasons why states have granted redemption rights. Statutory rights of redemption are a response to the harsh aspects of foreclosure by sale. Property sold at foreclosure theoretically goes to the highest of many bidders with sale proceeds going to the mortgagee to the extent necessary to satisfy his lien. Any surplus goes to satisfy junior liens. What is left, if any, goes to the mortgagor and represents his equity. Sale by bid was expected to provide a convenient means of disposing of the property at true market value established through competitive bidding.

Experience showed that the procedure did not protect the interests of the junior lienors or the mortgagor. The mortgagee was entitled to bid on credit up to the amount of the debt, an enormous advantage over other prospective bidders who were required to come up with cash. There would seldom be an interested outside buyer or junior lienor with cash at the time of sale. The mortgagee was therefore too frequently the only bidder at the sale, and the sale price was usually inadequate to permit junior lienors to realize anything on their claims or to provide surplus to the mortgagor.

Statutory rights of redemption give the mortgagor power to force the sale price closer to true market value. When sale at foreclosure is at an inadequate price, the purchaser (normally the mortgagee) runs the risk that the mortgagor or a junior

lienor,[2] given the additional time to arrange financing, will exercise his right. In order to avoid this risk the mortgagor will bid adequately. The mortgagee and junior lienors, if any, will then be satisfied to the true value of the property and there will be no reason for exercising the redemption right. *See generally, Stadium Apartments,* 425 F.2d at 368–69 (Ely, C.J., dissenting); Dunfee & Doddridge, *Redemption From Foreclosure Sale,* 23 Mich.L.Rev. 825, 827–834 (1925).

Considering the dynamics of foreclosure and redemption, we fail to see how adoption of state law in this case is inconsistent with the federal policy of helping farmers through financial difficulty. Allowing the government the unchecked powers of a credit bidder at foreclosure sale would appear to defeat that purpose. It also is apparent that those who supply farmers with equipment, fertilizer, seed and the like would be reluctant to provide those necessities on credit, as is commonly done, knowing that the government holds the power to force them, as junior lienors, to a loss in the event of foreclosure. Farmers unable to operate on a cash basis would be forced from the field. The alternative would be to seek primary financing from private lenders at less attractive rates than offered by the FmHA. Either result is inconsistent with the federal policy of strengthening the farming segment of the economy.

The government's reliance on *Stadium Apartments* is misplaced. *Stadium Apartments* held that federal law did not adopt state law granting post-foreclosure sale rights of redemption when the Federal Housing Authority forecloses a mortgage which it has guaranteed. That case involved a statute, the National Housing Act, the purpose of which was to spur homebuilding. 12 U.S.C. § 1738(a). We found that the added costs associated with redemption rights would defeat the primary purpose of the Act to build and make available as much housing as possible. *Stadium Apartments,* 425 F.2d at 364–67. Similarly,

---

2. Wash.Rev.Code Ann. § 6.24.130(2) provides rights of redemption to creditors having a lien by judgment, decree, or mortgage subsequent in time to that on which the property was sold.

in *Haddon Haciendas Co.,* we declined to adopt state law barring deficiency actions following foreclosure of a loan under section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715*l*(d)(4). We found that giving effect to the anti-deficiency laws of California would remove an incentive for borrowers to maintain their property, thereby defeating the purpose of the loan program to reduce or eliminate slum-like housing conditions. 541 F.2d at 782–84. It is clear that these cases are to be decided in light of the particular state and federal policies at stake. *MacKenzie,* 510 F.2d at 41.

The government makes much of the fact that the loan form utilized by the FmHA was a standard form. There was no individualized negotiation of the terms of the contract. The government argues that in these circumstances adoption of state law is inappropriate under *United States v. Yazell,* 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966) and *United States v. MacKenzie,* 510 F.2d 39 (1975) (en banc).

We reject the government's contention. In *Yazell,* the dispositive issue was the relative weight of and the interaction between the state and federal interests involved. 382 U.S. at 352, 86 S.Ct. at 506–07. The Supreme Court held that state interests "should be overriden by the federal courts only where clear and substantial interests of the National Government ... will suffer major damage if the state law is applied." *Id.* The failure of the SBA to negotiate a waiver of state law protections was merely further reason not to grant the government rights no other creditor could have had.[3] *Accord, MacKenzie,* 510 F.2d at 41.

That individual negotiation is not critical to our determination is demonstrated by *United States v. Crain,* 589 F.2d 996 (1979). *Crain* was a standard form, non-negotiated loan that contained a clause that waived relevant state law debtors rights. We nevertheless adopted state law protections because they did not jeopardize any "clear

and substantial interests" of the SBA loan program at issue. 589 F.2d at 1000.

Finally, we note that the FmHA has acknowledged the applicability of state redemption rights in its regulations. 7 C.F.R. § 1872.2(c)(1)(v) provides as follows:

> *Servicing Government redemption rights.* If the Government did not have an opportunity or for other reasons did not protect its interest at the time of the foreclosure sale by a prior lienholder and has any redemption rights, the State Director will determine whether to redeem the property before the redemption period expires.... This determination will be made at a time sufficiently prior to expiration of the redemption period to permit the exercise of the Government's rights.... If it is decided not to redeem the property, the right of redemption may be sold for its value by the State Director....

The only source of redemption rights for the government is state law. This section implicitly acknowledges that state law is applicable and provides for the exercise of redemption rights by the government. We hold that borrowers from the FmHA are entitled to state law redemption rights as well.

### CONCLUSION

That portion of the district court's opinion denying Ellis his right of redemption is vacated. The case is remanded for the district court to determine what, if any, redemption rights Ellis is entitled to under state law. If it is determined that he is entitled to a period of redemption, the period should run from the time the district court's amended judgment is issued.

---

3. We note that, under Washington law, a waiver of the right of redemption in a mortgage contract is invalid. *Boyer v. Paine,* 60 Wash. 56, 110 P. 682 (1910); *Batten v. Fallgren,* 2 Wash.App. 360, 467 P.2d 882 (1970).