**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Carol Dubay PASTOS and John W. Pastos, d/b/a Carol's Country Corner, Defendants-Appellants,**

and

**Security State Bank of Polson and Lake County, Defendants.**

**No. 84–4430.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 11, 1985.

Decided Jan. 28, 1986.

Robert Brooks, Asst. U.S. Atty., Butte, Mont., for plaintiff-appellee.

Paul C. Meismer, Garlington, Lohn, & Robinson, Missoula, Mont., for defendants-appellants.

Before SKOPIL, PREGERSON, and WIGGINS, Circuit Judges.

PREGERSON, Circuit Judge:

## INTRODUCTION

Appellants, Carol Dubay Pastos and John W. Pastos (the "Pastos") seek to redeem property purchased by appellees, the Small Business Administration (the "SBA"), at a mortgage foreclosure sale. The Pastos appeal the dismissals of their petition for redemption and motion to amend the foreclosure order. We reverse and remand.

## BACKGROUND

The Pastos owned commercial property in Montana subject to a first mortgage held by the Security State Bank of Polson (the "Bank") and to a second mortgage held by the SBA. The SBA note provides: "The undersigned waives all right of redemption or appraisement whether before or after sale."[1]

---

1. The mortgage provides that to the extent there are redemption rights, a foreclosure of the mortgage also forecloses those rights.

The Pastos fell behind in their mortgage payments for the first time in 1980. In July of 1983, they settled with both of the mortgagees, bringing both mortgages current to avoid foreclosure. Later that same year, the Pastos again fell behind in their mortgage payments. The SBA sued for foreclosure. On April 4, 1984, after a hearing, the District Court entered a Decree of Foreclosure and Order for the SBA and the Bank. The decree does not expressly mention redemption rights. Montana statutes, however, provide that all rights of redemption are applicable to mortgages in Montana. Mont.Code Ann. § 71-1-228. Moreover, Mont.Code Ann. § 71-3-109 provides that, with limited exceptions, all contracts in restraint of the right of redemption from a lien are void.

Immediately after the hearing, an SBA loan officer suggested that the Pastos sell their redemption rights. On May 22, 1984, a United States Marshal sold the property to the SBA for the cash amount of $41,082.39 plus $93.32 in costs. The sale price was the sum of the two mortgage balances owed to the SBA and the Bank plus accrued interest.

On June 1, 1984, the SBA wrote a letter to the Pastos requesting a written waiver of their redemption rights. The letter stated that the SBA could sell the property for an $8,000 profit that the SBA would transfer to the Pastos in return for their waiver. The Pastos requested and received information on the amount necessary for them to tender for redemption. They declined to waive their rights. Then on August 9, 1984, the SBA indicated that the Pastos had no redemption rights.[2]

The Pastos filed a petition to redeem the property. The district court denied the petition and the Pastos' motion to amend the order. The district court, 595 F.Supp. 1013, held that: (1) federal common law does not apply state redemption rights to nonnegotiated SBA loans with express waiver provisions; and (2) the SBA was not estopped from denying a redemption right.[3] The Pastos timely appealed.

## THE STANDARD OF REVIEW

The question whether federal common law applies state redemption rights to standard form SBA loans that expressly waive such rights is a question of law, and the *de novo* standard of review is appropriate. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

Whether federal law should defer to state laws protecting debtors when the government seeks to collect a debt generated by an SBA loan is not a novel question. *United States v. MacKenzie*, 510 F.2d 39, 41 (9th Cir.1975) (en banc). In *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1965), the Supreme Court held that when an individually negotiated loan specifically provides for the applicability of state law, the SBA cannot supercede state coverture statutes, absent a sufficient overriding federal interest. In *MacKenzie*, we applied *Yazell* and held that state redemption rights applied to SBA loan foreclosures when: (1) a contract

---

**2.** Throughout this proceeding, the position of the SBA has been inconsistent. After the decree of foreclosure, it suggested to the Pastos that they sell their redemption rights to the government. Later the SBA requested a waiver of those rights in exchange for a substantial cash payment. Only after the Pastos attempted to redeem, did the SBA deny the existence of their redemption rights. The SBA maintained that denial in the district court. On appeal, the SBA's official position remains the same, but during oral argument its counsel admitted that any profit on the resale of the property would be paid to the Pastos. Such a concession can only be viewed either as an intention by the SBA to confer a gratuity upon the Pastos or an intention to pay them money in exchange for their right of redemption. We suspect the latter. In short, the SBA has resisted recognizing the Pastos' redemption rights in court proceedings, but seems prepared to recognize it informally.

**3.** Because we decide that Montana redemption law applies in this case, we do not reach the estoppel issue.

is individually negotiated with no provision purporting to waive state rights; (2) no federal statute or regulation purports to nullify the rights; and (3) there is no overriding federal interest. 510 F.2d at 40–41.

The SBA argues and the district court held that *United States v. Stadium Apartments, Inc.,* 425 F.2d 358 (9th Cir.), *cert. denied, sub nom. Lynch v. United States,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 926 (1970), rather than *Yazell* or *MacKenzie,* controls the case at bar. *Stadium Apartments* involved a Federal Housing Authority ("FHA") guaranteed mortgage which was not individually negotiated and which expressly waived redemption rights. There we refused to apply state redemption rights as federal common law to FHA mortgages. *Stadium Apartments,* 425 F.2d at 366–67.

The Pastos' loan is similar to the loan in *Stadium Apartments* in that their loan expressly waives redemption rights and is on a non-negotiated standard loan form. But the Pastos' loan is an SBA loan, not an FHA loan; and this is an important difference because our cases have primarily focused on the issue of competing federal and state concerns when we consider applying state debtor protections as federal common law. *See United States v. Crain,* 589 F.2d 996, 999 (9th Cir.1979).

A. *The Effect of Contract Provisions*

Generally, "any interpretation of the rights and duties of the parties under a contract must begin with its terms." *United States v. Gish,* 559 F.2d 572, 574 (9th Cir.1977). In this case, the Pastos signed a standard SBA form promissory note in which they expressly waived all redemption rights and a mortgage that expressly included redemption rights as rights subject to foreclosure.

This court, however, has applied state law as the federal rule, even when the contract contained language to the contrary. In *Crain,* we applied Arizona's doctrine of equitable subrogation as federal common law even though the SBA mortgage guarantee form expressly provided that the SBA could proceed against the guarantors without first pursuing any rights it might have against the debtor. 589 F.2d at 1000. There we held that contractual provisions do not have the force of federal law and do not foreclose the question of what the federal rule is. *Id.* at 999 n. 2.[4] *See also United States v. Ellis,* 714 F.2d 953, 957 (9th Cir.1983) (federal law adopted state redemption rights even though the Farmers Home Administration mortgage expressly waived redemption rights).

Nor is the absence of an individually negotiated loan agreement a conclusive factor. We applied state law in *Crain* and *Ellis,* even though both cases involved standard form, non-negotiated loans. In so doing, we noted that "[i]n *Yazell,* the dispositive issue was the relative weight of and the interaction between the state and the federal interests involved." *Ellis,* 714 F.2d at 957 (citing *Yazell,* 382 U.S. at 352, 86 S.Ct. at 506). *But see United States v. Haddon Haciendas Co.,* 541 F.2d 777, 784 (9th Cir.1976) (fact borrowers/assignees assumed a standard form FHA regulatory agreement for a government insured note distinguishes the case from *Yazell* and *MacKenzie* ).

B. *The Effect of Federal Laws and Regulations*

■ We agree with the district court that federal law clearly applies in this case. The mortgage provides that foreclosure will result in a judicial sale pursuant to 28 U.S.C. § 2001(a), and the note provides that the instrument is to be construed and enforced in accordance with the applicable federal law. 13 C.F.R. § 101.1(d) (1985) provides:

4. In *United States v. Gish,* 559 F.2d 572, 573 (9th Cir.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978), the court stated that contractual provisions were a critical factor in determining that state anti-deficiency laws did not apply to SBA mortgages. *But see United States v. Crain,* 589 F.2d 996, 999 n. 2 (9th Cir.1979) (holding that reference in *Gish* to importance of contractual provisions as a key factor is dicta).

(2) ... mortgages ... shall be construed and enforced in accordance with applicable Federal law.

....

(4) Any person ... that applies for and receives any benefit or assistance from SBA shall not be entitled to claim or assert any local immunity to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance.

■ But neither the statute nor the regulations discusses redemption rights. A redemption right provides protection for the debtor. It is not a local immunity because it requires complete payment of the principal, interest, and sale costs. Thus, 13 C.F.R. § 101.1(d)(4) (1985) does not prohibit debtor protections such as redemption rights. *See MacKenzie,* 510 F.2d at 40. The regulations simply state a rule that federal rather than state law governs SBA transactions. They do not indicate what the applicable federal law is. *Crain,* 589 at 999 n. 2.

This case is different from *Gish* where we held that federal law does not apply state anti-deficiency laws to SBA disaster relief loans. 559 F.2d at 575. Anti-deficiency laws provide a total local immunity, which SBA regulations expressly preclude. *See* 13 C.F.R. § 101.1(d)(4) (1985). Since a debtor must pay the debt in full to qualify for redemption, the right does not provide immunity to defeat an obligation. Thus, no federal statute or regulation purports to nullify the state redemption right in this case.

C. *The Effect of State and Federal Policies*

■ Whether the court should adopt state law as federal common law depends on whether the state law can be given effect without conflicting with federal policy. *Crain,* 589 F.2d at 999; *Haddon Haciendas Co.,* 541 F.2d at 784. Moreover, courts should not "create federal law by implication that is antithetical to state laws protecting debtors unless doing so is necessary to achieve the overriding purposes of

Congress in enacting the statutes under which the loans were made or to preserve some other paramount federal interest." *MacKenzie,* 510 F.2d at 40.

Montana has a strong public policy in favor of redemption. All redemption rights are applicable to mortgages in Montana. Mont.Code Ann. § 71-1-228. With limited exceptions, all contracts in restraint of the right of redemption from a lien are void. Mont.Code Ann. § 71-3-109. The Montana Supreme Court interpreted the state's legislative policy to be that "when an unfortunate debtor has lost his land, either under mortgage foreclosure or execution sale, he shall have the opportunity to regain it by complying with the conditions imposed...." *Hamilton v. Hamilton,* 51 Mont. 509, 154 P. 717, 723 (1916).

The SBA argues that we should not recognize redemption rights because such recognition would result in increased costs to the SBA from having to hold and maintain the property during the redemption period. In *MacKenzie,* however, we held that federal deference to state redemption laws does not impair the congressional purpose in enacting SBA legislation or the federal interest in having the loans repaid. 510 F.2d at 41-42. Redemption rights allow a debtor to defeat an artificially low bid for the mortgaged property. In the absence of redemption rights, the government might be able to reap a double recovery by bidding below the market price at the foreclosure sale, reselling the property at a higher price, and demanding a deficiency judgment from the debtor. "Depriving the Government of potential 'double recoveries' created by artificially large deficiencies that it has caused takes away nothing to which it is entitled." *Id.* at 42.

In fact, extending redemption right protection is consistent with the SBA's goal of assisting small businesses. "To deprive those very businessmen of protection from economic overreaching [during foreclosure sales] will adversely affect their ability to survive a foreclosure and to start afresh and will potentially deter those whom Con-

gress wanted to help as much as possible from seeking SBA loans." *Id.* at 42.

The government argues that we should deny redemption rights in the SBA loan program because such rights increase the program's costs. We rejected a similar argument in *Ellis*. Relying on SBA loan cases such as *Yazell, Crain,* and *MacKenzie,* we held that the increased costs to the Farmers Home Administration (the "FmHA") loan program did not override the state's concern in protecting debtors. *Ellis,* 714 F.2d at 955. The FHA cases such as *Stadium Apartments* are distinguishable from the SBA and FmHA cases because higher foreclosure costs decrease the amount of funds available for the National Housing Act's primary purpose of making available as much housing as possible. *Ellis,* 714 F.2d at 956.

The SBA also argues that the state redemption law should not be applied because it will destroy the uniform operation of the federal law. Although we recognize that application of state redemption laws to SBA loans upsets federal uniformity, rejection would also unnecessarily introduce a lack of uniformity into debtor-creditor relationships within a state. "No federal interest requires such an intrusion into state regulation of commercial transactions." 589 F.2d at 1000.

## CONCLUSION

▆ The Pastos' loan, which was not individually negotiated, contains an express waiver of redemption rights. But the critical factor is the balance between federal and state interests. We believe the balance should be struck in favor of the state's interest in protecting its debtors through a consistent application of its laws. Therefore, we hold that state redemption laws apply to SBA loans even when the

loan contains an express waiver of redemption rights.[5]

REVERSED AND REMANDED for further proceedings consistent with the views herein expressed.

---

5. The SBA also contends that the April Decree of Foreclosure extinguished the Pastos' redemption rights. The district court did not make a finding on this issue, although it was raised by the parties in oral argument. Because state redemption rights apply to an SBA loan even when it contains an express waiver, we do not read 28 U.S.C. § 2001(a) as empowering the district court to extinguish redemption rights. *See Ellis,* 714 F.2d at 954 (state redemption rights apply to FmHA loan even though the district court judgment ordering foreclosure specifically denied redemption rights).