**UNITED STATES of America, Plaintiff,**

v.

**Rudolph A. VALLEJO, Jr., Defendant.**

**No. C86–411C.**

United States District Court,
W.D. Washington.

April 3, 1987.

Gene S. Anderson, U.S. Atty., Anastasia K. Dritshulas, Asst. U.S. Atty., Seattle, Wash., for plaintiff.

David A. Leen, Leen & Moore, Seattle, Wash., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR DECLARATORY JUDGMENT AND ORDER OF DISMISSAL

COUGHENOUR, District Judge.

Plaintiff filed this suit to obtain judgment for the amount of deficiency on a loan guaranteed by the Veterans Administration. Defendant has moved for declaratory judgment and an order of dismissal.

In June, 1981, defendant entered into a loan agreement to purchase a house in Snohomish County, Washington. The loan was secured by a deed of trust on the property, and was guaranteed by the Veterans Administration ("VA"). The note was later assigned to the Federal National Mortgage Association ("FNMA"). The application for a loan guaranty provided that the federal regulations promulgated pursuant to Chapter 37, Title 38, United States Code, would govern the rights, duties, and liabilities of the parties. The defendant defaulted on the loan around November 1, 1981. On August 27, 1982, non-judicial foreclosure on the deed of trust securing the note was completed by the Trustee's sale of the property. Before the sale, pursuant to federal regulations, the VA conducted an independent appraisal of the home's value. The appraiser concluded that the home had a market value of $53,500. The VA then instructed FNMA to bid that amount at the foreclosure sale, a procedure which the plaintiff argues is equivalent to Washington's "upset bid" procedure, and is intended to ensure that the property securing a veteran's debt is not sold at a price far below market value. FNMA bid $53,500, and was the successful bidder at the foreclosure sale. FNMA then conveyed the property to the VA. The VA paid FNMA the sale price plus $8,870.74, the difference between the amount of the successful bid and the amount allegedly owing on the promissory note. The VA sold the property in February 1983 for $53,500. After crediting defendant amounts he paid for taxes and insurance on the property, the VA filed this action seeking a judgment for $8,738.65.

Defendant argues in his motion to dismiss that the VA is not entitled to maintain an action for a deficiency judgment. Defendant contends that this Court should apply the Washington anti-deficiency judgment statute as the federal law, and argues that the non-judicial foreclosure on the deed of trust pursuant to RCW 61.24 was an election of available remedies that precludes the instant action. Plaintiff responds that the Washington anti-deficiency statute, RCW 61.24.100, should not be adopted as federal law because it would convert a loan guaranty program into a "grant" program. Moreover, plaintiff concedes that it is not entitled to a "deficiency judgment" by subrogation to the rights of the holder of defendant's promissory note, but argues that its suit is based on a right

to indemnification which is independent of the right to seek a deficiency judgment.

Federal law governs the rights of the United States under nationwide federal programs. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). " 'In the absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.' " *Id.* (quoting *Clearfield Trust Co. v. United States,* 318 U.S. 363, 366–67, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943)). When there is little need for a uniform body of federal law, state law may be incorporated as the federal rule of decision. 440 U.S. at 728, 99 S.Ct. at 1458.

In determining whether to apply state law, the court must decide whether application of state law would frustrate specific objectives of the federal programs. *Id.* Where Congress has not completely displaced state law in a specific area, state law is nullified to the extent that it actually conflicts with federal law. *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). If there is no direct conflict between state and federal laws, federal courts should show solicitude for state laws; "[t]hey should be overridden by the federal courts only where clear and substantial interests of the National Government, which cannot be served consistently with such state interests, will suffer major damage if the state law is applied." *United States v. Yazell,* 382 U.S. 341, 352, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966); *see also Kimbell Foods,* 440 U.S. at 729, 99 S.Ct. at 1459; *United States v. Pastos,* 781 F.2d 747, 751 (9th Cir.1986); *United States v. Ellis,* 714 F.2d 953, 957 (9th Cir.1983) (quoting *Yazell*); *United States v. MacKenzie,* 510 F.2d 39, 41 (9th Cir.1975).

■ Plaintiff appears to argue that the courts should fashion a uniform federal law rather than adopting state law as the federal rule of decision, and relies on *United States v. Shimer,* 367 U.S. 374, 377, 81 S.Ct. 1554, 1557–58, 6 L.Ed.2d 908 (1961). In *Shimer,* the Supreme Court held that federal regulations determining credits and defining bid procedures were intended to remedy exactly the same abuses as a Pennsylvania Deficiency Judgment Statute. The Court noted the completeness of this federal regulatory scheme, and held that it displaced the inconsistent state law. In this regard, *Shimer* must be distinguished from the case at bar. Rather than establish a federal method for foreclosure on the property that was the subject of the loan, the VA regulations at issue here contemplate that foreclosure actions will be conducted under applicable state law. *See* 38 C.F.R. §§ 36.4319, 36.4320. The deed of trust itself specifies that foreclosure in the event of default is to be according to the Washington Deeds of Trust Act. (Deed of Trust, ¶ 22) The regulations upon which plaintiff relies were not intended to displace the general foreclosure provisions of state law. *Cf. Kimbell Foods,* 440 U.S. at 729–33, 99 S.Ct. at 1459–61 (Farmers Home Administration ("FmHA") regulations do not displace state commercial laws determining priority of private creditors and United States).

Plaintiff next argues that application of RCW 61.24.100 to deny plaintiff's judgment is inconsistent with the purposes of the federal loan guaranty program. Defendant contends that allowing defendant to rely on Washington's anti-deficiency statute would turn the loan guaranty into an outright grant and reduce future incentives for lenders to participate in the loan program. If the VA were to follow its own regulations, neither of these dire consequences would occur.

Under 38 U.S.C. § 1816(a)(1) the holder of a veteran's promissory note is required to notify the VA in the event of default. When notified, the Administrator may pay the note holder the guaranty (not in excess of the pro rata portion of the amount originally guaranteed) and be subrogated to the rights of the holder to the extent of the amount paid on the guaranty. *Id.* The holder is also required to notify the Administrator before suit or foreclosure of the obligation, and the Administrator then has thirty days to decide whether to pay the

holder the unpaid balance of the obligation and receive an assignment of the note and security. 38 U.S.C. § 1816(a)(2). The holder of a defaulted obligation must give the Administrator 30 days' notice before taking steps to terminate the debtor's rights in the security. 38 C.F.R. § 36.4317 (1986). The Administrator then has 15 days in which to notify the holder to proceed in "such manner as to effectively preserve the personal liability of the parties liable...." 38 C.F.R. § 36.4324(f) (1986). In the absence of such notice, "an election and appropriate prosecution of legally available effective remedies with respect to ... liquidation of the security" will not release the Administrator as guarantor or insurer. *Id.* Clearly, the regulations and statutes governing the VA loan guaranty program allow the Administrator to choose judicial or non-judicial foreclosure on a deed of trust on property located in Washington; the Administrator obtains the power to select foreclosure methods by subrogation to the holder's rights, taking assignment of the loan and security, or by explicit direction to the holder regarding foreclosure proceedings. The Administrator therefore occupies the same position vis-a-vis a defaulting debtor as any private creditor. The Government cannot complain that adoption of Washington law as the federal rule of decision leaves the VA unsecured to any greater extent than a similarly situated private creditor.

Under Washington law, a creditor who holds a deed of trust as security for a loan can use either judicial or non-judicial procedures to enforce the security, but the remedies available to a creditor using non-judicial procedures are limited to foreclosure alone. RCW 61.24.120; *Fluke Capital & Management Services Co. v. Richmond,* 106 Wash.2d 614, 724 P.2d 356 (1986). A trustee's sale of property subject to a deed of trust precludes a subsequent suit for a deficiency decree. RCW 61.24.100. Even though the beneficiary of a deed of trust loses the right to seek a deficiency judgment, a non-judicial trustee's sale is often the preferred means of foreclosure because it eliminates statutory redemption rights, RCW 61.24.050, and because it is not subject to the debtor's homestead rights. *Fel-*

*ton v. Citizens Federal Savings & Loan Association of Seattle,* 101 Wash.2d 416, 679 P.2d 928 (1984). Non-judicial foreclosure obviously provides significant advantages to a creditor seeking to liquidate security for a defaulted loan; these advantages have been conferred by the legislature in return for the creditors' relinquishment of the right to obtain a deficiency judgment. *See generally,* Note, Court Actions Contesting the Nonjudicial Foreclosure of Deeds of Trust in Washington, 59 Wash.L.Rev. 323 (1984). The Government argues that this Court must allow the VA to retain the significant benefits afforded by the Washington Deeds of Trust Act, but must also fashion a federal law that enables it to avoid the loss of a deficiency judgment suffered by private lenders. The federal interests articulated by the Government do not support this result.

Plaintiff argues that adopting Washington law as the federal rule of decision would convert the VA loan guaranty program into a "grant" program by arbitrarily releasing veterans from their obligations to the VA. Whether the VA is to preserve its rights against the veteran debtor, however, is a choice the Administrator makes in deciding whether to pursue judicial foreclosure that would preserve the VA's right to a deficiency judgment. All creditors foreclosing a deed of trust in Washington must make the same choice. There is also no merit in plaintiff's contention that adoption of Washington law would reduce lenders' incentives to participate in the VA loan guaranty program.

The federal interests in the VA loan program are:

> "to enable veterans to obtain loans and to obtain them with the least risk of loss upon foreclosure, to both veteran and the Veterans' Administration as guarantor of the veteran's indebtedness."

*Shimer,* 367 U.S. at 383, 81 S.Ct. at 1560. Adoption of Washington's anti-deficiency statute would neither hamper veterans' ability to procure housing loans, nor increase the VA's risk of loss upon foreclosure. Requiring the VA to foreclose judicially in order to preserve rights to a

deficiency judgment would potentially increase the costs of administering the loan guaranty program. Increased costs alone, however, are not a strong enough federal interest to override states' concerns in protecting debtors. *See United States v. Pastos*, 781 F.2d at 752 (state redemption rights in SBA loan program); *United States v. Ellis*, 714 F.2d at 955 (Washington redemption rights to FmHA loan program); *Kimbell Foods*, 440 U.S. at 740, 99 S.Ct. at 1464–65 (state lien priority statute in SBA and FHA lending programs).

On the other hand, adopting the Government's position would increase the risk of loss suffered by veteran debtors in Washington. Debtors who obtain VA-guaranteed loans may lose their redemption and homestead rights, but unlike other debtors in private transactions, will also remain liable for any deficiency judgment. In addition to increasing the risk of loss a veteran faces, the Government's position would deter veterans from seeking VA-guaranteed loans, a result Congress could not have intended. *See United States v. Pastos*, 781 F.2d at 751–52.

Not only would adoption of RCW 61.24.100 promote federal interests in the VA loan guaranty program by decreasing the veterans' risk of loss, it would enhance the substantial interest of Washington in protecting debtors residing within the State. Plaintiff has come forward with no federal interests which would justify overriding the accommodation between creditors' remedies and debtors' protections reached by the Washington legislature. Cases cited by the plaintiff may be distinguished because the state laws at issue there conflicted with a recognized policy of the federal programs. *See United States v. Haddon Haciendas Co.*, 541 F.2d 777, 782–84 (9th Cir.1976); *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 364–67 (9th Cir.), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). *United States v. Gish*, 559 F.2d 572 (9th Cir.1977), may also be distinguished because the Small Business Administration regulations

at issue there expressly precluded anti-deficiency laws that provide a total local immunity. *See United States v. Pastos*, 781 F.2d at 751.

■ Plaintiff argues that it does not rely on its rights as subrogee to the note-holder's rights as against defendant, but rather on its right to be indemnified as provided by VA regulations:

"Any amounts paid by the Administrator on account of the liabilities of any veteran guaranteed or insured under the provisions of 38 U.S.C. Chapter 37 shall constitute a debt owing to the United States by such veteran."

38 C.F.R. § 36.4323(e). Plaintiff argues that this regulation creates a right of indemnity that is independent of the VA's rights as subrogee on the note. *See Shimer*, 367 U.S. at 386–88, 81 S.Ct. at 1562–63. "The Regulation is merely declaratory of a surety's customary right of indemnity for amounts paid pursuant to an obligation of the guarantor assumed with the consent of the principal." 367 U.S. at 387–88, 81 S.Ct. at 1563. The Government is attempting to stretch its rights as a surety beyond the underlying obligation of the debtor as principal to the holder of the guaranteed note. As the language of section 4323(e) indicates, the defendant is an indemnifier for any amounts paid "on account of the *liabilities*" of the veteran; where the VA as surety fails to require the note holder to foreclose judicially in order to preserve the principal's personal liability under RCW 61.24.100, any payments in excess of the amount bid at the trustee's sale are *not* payments on account of the liabilities of the veteran.[1] This result is consistent with the general law of suretyship, as required by *Shimer*, 367 U.S. at 388, 81 S.Ct. at 1563. Whether the VA calls itself a subrogee or an obligee under a duty to indemnify, the principal is not obligated to indemnify the VA as surety for payments to the holder of amounts for which the veteran is not personally liable. In a situation such as this

---

1. The Supreme Court noted in *Shimer* that the regulation was amended to substitute the phrase "on account of the liabilities of any veteran" for the earlier language, "pursuant to the guaranty." 367 U.S. at 388 n. 13, 81 S.Ct. at 1563 n. 13.

one where the surety had the power and ability to direct the creditor to take steps to hold the debtor personally liable on the note, it would be inequitable to allow the surety to retain the benefits of non-judicial foreclosure but, by the mere interposition of another party between itself and the veteran debtor, avoid the loss of a deficiency judgment inherent in its own election of remedies.[2]

Although the Court concludes that defendant is entitled to an order of dismissal, it disagrees that defendant is entitled to an award of attorneys' fees. The Court will not adopt RCW 4.84.330 as the federal rule of decision regarding the Government's contractual liability for attorneys' fees, and the Court finds that the position of the United States was substantially justified so that an award of fees under the Equal Access to Justice Act is inappropriate. 28 U.S.C. § 2412(d)(1)(A).

Defendant's motion to dismiss plaintiff's complaint is GRANTED. This action is DISMISSED WITH PREJUDICE.

The Clerk of the Court is directed to enter judgment for the defendant, and to send uncertified copies of this Order and of the judgment to all counsel of record.

**2.** The Court's decision that RCW 61.24.100 should be adopted as the federal rule of decision obviates the need to address defendant's due process arguments.