**UNITED STATES of America, Plaintiff,**

v.

**TERUYA RESTAURANT, LTD., a Hawaii corporation, James Hideo Teruya, Fujiyo Teruya, Stanley Yoshinori Zaha, Nancy Harujo Zaha, Honolulu Federal Savings and Loan Association, a Hawaii corporation (fka Honolulu Savings and Loan Company, Ltd.) and American Savings and Loan Association, a Utah corporation, Defendants.**

**Civ. No. 84–0634.**

United States District Court,
D. Hawaii.

July 21, 1987.

Florence Nakakuni, Asst. U.S. Atty., Robin K. Campaniano, Sp. Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff.

Walter Beh, II, Hamilton, Gibson, Nickelsen, Rush & Moore, Honolulu, Hawaii, for Honolulu Federal Sav. and Loan.

Allan Chock, Christopher Lau, Honolulu, Hawaii, for American Sav. and Loan.

John Harris Pear, Honolulu, Hawaii, for Stanley and Nancy Zaha.

Howard Y. Tanaka, Honolulu, Hawaii, for James and Fujiyo Teruya.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

KAY, District Judge.

This case came on for hearing before this court on cross-motions for summary judgment. Specifically, the United States has moved for summary judgment and an interlocutory decree of foreclosure against defendants Stanley and Nancy Zaha (Zahas). The Zahas, who mortgaged real property as security for a guaranty which has been assigned to the United States Small Business Administration (SBA), have moved for a summary judgment modifying or discharging their obligations as guarantors. Mr. Huddy Lucas appeared on behalf of the United States and Mr. John Paer appeared on behalf of the Zahas.

I.

The essential facts of the transaction which gave rise to the instant dispute are as follows. In May of 1979, City Bank extended a $400,000 loan to Teruya Restaurant, Ltd. The loan was 90% guaranteed by the SBA. The president of Teruya Restaurant, Ltd. executed a promissory note for $400,000 in favor of City Bank in exchange for the loan. The loan agreement was prepared on a standard SBA form. The security contemplated by the loan agreement consisted of five items: (1) a first mortgage on the leasehold interest where the Teruya restaurant was located, (2) a first lien in all restaurant fixtures, equipment, machinery, etc. acquired with the loan proceeds, (3) a personal guaranty of James and Fujiyo Teruya secured by a second mortgage on their residence, subject only to a first mortgage in an amount not to exceed $52,000, (4) a personal guaranty of Stanley and Nancy Zaha secured by a second mortgage on their residence, and (5) various life insurance policies.

When Teruya Restaurant, Ltd. defaulted on the loan, the promissory note, the loan, the guaranties, and the mortgages securing the guaranties were assigned to the SBA. The SBA now seeks summary judgment and an interlocutory decree of foreclosure on the Zaha residence. The Zahas have responded to the motion for summary judgment and have cross-moved for summary judgment, alleging various grounds for the discharge or modification of their

obligations as guarantors to the SBA. Some of the Zahas' defenses find their origins in the common law, while others are derived from Hawaii statutes.

This court finds that the Zahas should be granted summary judgment on the basis of the fact that City Bank never perfected (and the SBA subsequently waived) its security interest in the restaurant leasehold contemplated by the loan agreement and the fact that the Teruya residence was subject to a much larger senior lien than agreed. Therefore, only this particular defense will be analyzed in the instant order.

## II.

As noted above, the loan agreement executed in May of 1979 contemplated that the loan would be secured by five categories of collateral. The SBA's approval of the loan agreement was premised on City Bank's acquisition of a perfected security interest in the contemplated collateral. The undisputed evidence adduced with the memoranda in support of and in opposition to these cross-motions for summary judgment leads to the conclusion, however, that City Bank never perfected a security interest in a significant portion of the contemplated collateral.

First, City Bank never obtained its security interest in the leasehold of the real property where the Teruya restaurant was located. In March of 1980, about ten months after the loan agreement and the Zaha guaranty had been executed, the SBA, upon City Bank's request, waived the requirement that City Bank obtain the leasehold interest as security before the loan would be approved. The record of this case indicates that City Bank did not attempt to obtain the approval of the lessor of the restaurant premises with respect to a mortgage on the leasehold interest as security for the loan until some time after the loan had been approved by the SBA and executed by City Bank. (See Prinzivalli deposition, pp. 33–39.) Apparently, neither the SBA nor City Bank was able to induce the lessor to consent at that late date to the mortgage of the leasehold interest after the proceeds from the loan had already been extended. When it became clear that the lessor was not amenable to a mortgage of the leasehold interest, City Bank requested that SBA waive the leasehold mortgage requirement. The SBA acceded to this request for a waiver and this waiver of collateral constituted a significant modification and impairment of the creditor's security interests. The Zahas' affidavits state that they "did not have notice that Plaintiff [the SBA] relinquished its right to a mortgage on the leasehold interest at the Kapiolani location [where the restaurant was located]."

The parties agree, and the evidence in the file indicates, that the leasehold had a value of approximately $400,000. This value was calculated as follows. When Teruya Restaurant, Ltd. went into default on the City Bank loan, officers of the corporation attempted to sell the Teruya restaurant. An offer was made by "clients of Marcus & Associates" to purchase the restaurant for $425,000. This purchase price included the restaurant equipment and the existing lease. Teruya Restaurant, Ltd. submitted a counter-offer of $455,000. Because the lessor was not amenable to an assignment of the lease to prospective purchasers of the restaurant, Teruya Restaurant, Ltd. was unable to finalize the sale of the Teruya restaurant. Ultimately, the fixtures and equipment of the Teruya restaurant were sold by the SBA for a mere $45,000. Had the restaurant been sold as a business, including the lease on the location as well as the equipment, the restaurant could have been sold for between $425,000 and $455,000. Thus, but for the SBA's waiver of the mortgage on the leasehold interest, the SBA would presumably have been able to sell the restaurant as a business for an amount between $425,000 and $455,000 since it held a first lien on all the restaurant equipment as security on the loan. Because of the SBA waiver, however, only the restaurant equipment was sold for $45,000, resulting in an impairment to the collateral of an amount between $380,000 and $410,000. As noted above, counsel for the government conceded at the hearing on this motion that a fair valuation of the mortgage on the leasehold interest,

which was never obtained by City Bank and waived by the SBA, was approximately $400,000.

Second, the loan agreement contemplated the achievement of security of a second mortgage on the Teruya residence subject only to a first mortgage in an amount not to exceed $52,000. The uncontroverted evidence on file indicates that mortgage liens senior to City Bank's security interest in the Teruya residence totalled some $100,-000. An additional $48,000 in encumbrances on the Teruya residence, in the form of a mortgage in favor of American Savings and Loan, was not discovered by City Bank or the SBA before the loan to Teruya Restaurant, Ltd. was closed. The attorney for the government represented at the hearing on this motion that a title search was conducted on the Teruya residence before the loan closed, but that additional encumbrances had been placed on the Teruya residence between the date of this title search and the closing of the loan. Had City Bank or the SBA adhered to the customary practice of lenders by bringing the title search on the Teruya residence current to the time of the loan closing, the additional $48,000 encumbrance would have been discovered. The additional encumbrance on the Teruya residence was never disclosed to the Zahas.

As is indicated in the foregoing discussion, approximately $448,000 in contemplated collateral on the loan to Teruya Restaurant, Ltd. was never achieved by City Bank. As discussed above, the restaurant leasehold was valued at $400,000. The lien on the restaurant equipment was valued at $60,000, including $45,000 in equipment at the Teruya restaurant and $15,000 in equipment at the River Street restaurant. The Teruya home was appraised at $210,000, and the SBA and City Bank were aware of a $52,000 senior lien at the time of the loan closing, leaving City Bank with a security interest of $158,000. The Zaha home was appraised at $175,000, and the SBA and City Bank were aware of a $29,000 senior lien at the time of the loan closing, leaving City Bank with a security interest of $146,-000. Thus, the total value of the contemplated collateral was approximately $764,-000. The $448,000 in non-achieved collateral represents nearly 60% of the collateral contemplated by the loan agreement. The SBA expressly waived $400,000 of this collateral, and failed to discover the additional $48,000 encumbrance on the Teruya residence.

The Zahas argue that the failure of City Bank to achieve the collateral contemplated by the loan agreement should discharge their obligations as guarantors. The SBA responds by arguing that the Zahas did not rely on the $448,000 in non-achieved collateral when they executed their guaranty in favor of City Bank and that, in any case, the standard SBA guaranty form executed by the Zahas contains a "waiver" which allows the lender to release collateral without affecting the validity of the guaranty.

■ First, the attorney for the government has failed to direct this court to any case law standing for the proposition that a guarantor must have relied upon the achievement of all contemplated collateral before a discharge of the guarantor's obligations will result from release of some of the collateral. Moreover, this court's research for cases which would support such a proposition has been fruitless.

■ Second, the provision of the SBA guaranty relied upon by the SBA in its response to the Zahas' argument vests City Bank with the authority to "consent to the substitution, exchange, or release of all or any part of the collateral ..." This court notes, however, that in the instant case the contemplated collateral was not substituted, exchanged, or released. The collateral was never achieved because City Bank failed to obtain a mortgage on the restaurant lease at loan closing and the SBA waived the collateral months thereafter and because the SBA and City Bank failed to bring the title search on the Teruya residence current to loan closing and thereby discover an additional senior encumbrance of $48,000. Clearly, collateral which has not been achieved cannot be substituted, exchanged, or released.

■ Furthermore, even if this case did implicate the lender's purported authority

to substitute, exchange, or release collateral, this authority is qualified in a significant respect. Specifically, City Bank's authority to release collateral is, by the terms of the guaranty, "subject to the provisions of any agreement between the Debtor ... and Lender at the time in force ..." The loan agreement is one such agreement and, as noted above, the loan agreement specifically contemplated that the loan would be secured by certain collateral including the restaurant premises leasehold and the Teruya residence with not more than $52,000 of encumbrances. When this collateral was not achieved, the creditor's security interests were significantly impaired. Indeed, as noted above, less than one half of the collateral on the loan was achieved by City Bank. When a creditor fails to achieve such a significant portion of the contemplated collateral, it is only equitable that the guarantors be discharged. Thus, the provision of the guaranty agreement relied upon by the SBA is not controlling in the instant case.

Furthermore, there is authority amongst federal circuit courts which stands for the proposition that an SBA form guaranty should not be construed without reference to the loan and security agreements which underlie the guaranty. Thus, in *U.S. v. Bass*, 618 F.2d 500, 503 (8th Cir.1980), the court examined the relationship between a loan agreement and an SBA form guaranty securing the loan and held that "the specific provisions of the note and the security agreement ... control over the more general provisions of the guaranty agreement." Similarly, in *U.S. v. Sims*, 586 F.2d 580, 586 (5th Cir.1978), the court held that "the security agreements executed contemporaneous with the execution of the guaranty ... determine what limitations existed on SBA's authority to proceed against the collateral." In the instant case, the specific security provisions of the loan agreement control the more general terms of the guaranty. Accordingly, the guaranty cannot be fairly construed to constitute a "waiver" of the Zahas' right to raise a defense in this action arising from the lender's omissions and the SBA's waiver with respect to the collateral.

In *U.S. v. Pastos*, 781 F.2d 747 (9th Cir.1986) and *U.S. v. Crain*, 589 F.2d 996 (9th Cir.1979), the Ninth Circuit held that state debtor protections are available to guarantors who have executed SBA form guaranties. Debtor protections running in favor of guarantors were discussed in the case of *Hawaii Leasing v. Klein*, 5 Hawaii App. 450, 698 P.2d 309, 313 (1985), where the court adopted what it characterized as "the general rule" that "any action or omission by the creditor in breach of an obligation to the guarantor which injures the guarantor or the rights of the guarantor operates to discharge the guarantor, at least to the extent of the injury." One of the obligations of the creditor running in favor of the guarantor is the protection and preservation of the security. "Where the creditor, having had other security for payment of the debtor's obligation, releases or diverts that security, the guarantor is generally discharged to the extent of the value of the collateral released or diverted." 38 Am.Jur.2d, *Guaranty* § 84.

In the instant case, it would be incorrect to find that security for the loan had been released in that the security interest was never perfected. However, there was a failure to achieve the contemplated security on the restaurant leasehold and Teruya residence and a subsequent waiver by the SBA of the contemplated security on the restaurant leasehold. This court is of the opinion that the failure of a creditor to achieve contemplated security and, indeed, to waive the security contemplated by a loan agreement once the loan agreement has been executed, is as egregious, if not more so, than the release or diversion of collateral which the creditor has achieved. Therefore, this court finds that the rationale behind the general rule as stated above is applicable in the instant case. Thus, the Zahas are entitled to discharge of their obligations as guarantors at least to the extent of the value of the collateral which was never achieved and/or which was waived.

Applying this rule to the instant case results in a complete discharge of the Za-

has' obligations as guarantors. Consequently, this court does not have to determine, as some courts have held, whether the guarantors should be completely discharged although their obligations otherwise exceeded the value of the security which the lender had given up. In the instant case, the SBA's motion for summary judgment indicates that there is at the present time $428,345.24 in principal and interest due and owing on the note executed by Teruya Restaurant, Ltd. and guarantied by the Zahas. As indicated above, the cumulative value of the security interests which were never achieved and/or waived is approximately $448,000, or more than half the security contemplated by the loan agreement. Because the injury to the Zahas occasioned by the non-achievement and/or waiver of the collateral was greater than the extent of their obligations as guarantors as claimed by the SBA, the Zahas' obligations as guarantors are completely discharged.

This court notes that the court in *U.S. v. Sims, supra.*, has found that the general rule that guarantors' obligations are discharged to the extent of the value of the collateral released applies in a case where the SBA proceeds against a guarantor under a form guaranty securing a SBA guaranteed loan.

Thus, this court finds that no genuine issue of material fact precludes granting the Zahas' motion for summary judgment in the instant case. The uncontroverted evidence establishes that City Bank and the SBA failed to achieve (or waived as with respect to the restaurant leasehold) the security interests contemplated in the loan agreement. The value of the collateral which was not achieved and/or waived is greater than the extent of the Zaha's obligations as guarantors. As a matter of law, then, the Zahas are entitled to summary judgment discharging their obligations as guarantors.

WHEREFORE, it is hereby ORDERED that the United States' motion for summary judgment is DENIED and the Zaha's motion for summary judgment is GRANTED.