952 F.2d 397
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Quentin GREGORY, Jr., Defendant-Appellant.
 No. 91-3503.
 United States Court of Appeals, Fourth Circuit.
 Submitted Oct. 28, 1991.
Decided Dec. 19, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City. (CA-90-5-2-CIV), Franklin T. Dupree, Jr., Senior District Judge.
 M. Annette Rhodes, Allen & Pinnix, Raleigh, N.C., for appellant.
 Margaret Person Currin, United States Attorney, Eileen G. Coffey, Assistant United States Attorney, Raleigh, N.C., for appellee.
 E.D.N.C.
 AFFIRMED.
 Before WIDENER and SPROUSE, Circuit Judges, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 The United States filed this action in district court on behalf of its agency, the Farmers Home Administration ("FmHA"). In its complaint, the government sought an order declaring that: (1) the FmHA held a valid security interest in the crops and chattels described in certain security agreements which defendant, Quentin Gregory, Jr., executed; and (2) the FmHA be permitted to enter defendant's premises to inspect the collateral. In granting the government's motion for summary judgment, the district court held that defendant failed to present evidence sufficient to create a genuine issue of material fact regarding the validity of the security agreements in issue. Further, the court held that defendant failed to offer an adequate reason why the FmHA should not be allowed to inspect defendant's crops and equipment pursuant to the express terms of the security agreements, there being no error in the district court's determination, we affirm.
 
 I. Facts
 
 2
 This dispute arises out of four security agreements executed on March 8, 1972; April 24, 1973; May 12, 1977; and May 26, 1978. The FmHA and defendant intended for the agreements to provide security for loans made on six occasions. Only three loans, evidenced by one promissory note executed on April 29, 1976, and two promissory notes executed on May 26, 1978, remain outstanding. Defendant's total indebtedness to the FmHA as of January 4, 1991, was $1,823,860.42, consisting of $1,039,675.15 in principal and $784,185.27 in interest.
 
 
 3
 Defendant concurrently executed with promissory notes three of the above mentioned security agreements, those made on March 8, 1972; April 24, 1973; and May 12, 1977. Defendant has repaid these three loans. However, each of these security agreements contained language stating that the security agreement would secure both existing and future loans. For example, the security agreement dated March 8, 1972 granted security interest:
 
 
 4
 in consideration of said loan(s) and (a) at all times when the note is held by Secured Party, or in the event Secured Party should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and any additional loans to Debtor heretofore or hereafter made or issued by Secured Party under the then existing provisions of Subtitle B or C of the foregoing statute....
 
 
 5
 (J.A. 15). The three security agreements which defendant later executed contained similar clauses.
 
 
 6
 In each security agreement, defendant agreed that he would "permit Secured Party to inspect the collateral at any reasonable time." (J.A. 18, 22, 26, 30). Defendant further agreed that the security agreements were "subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof." (J.A. 19, 23, 27, 31).
 
 
 7
 FmHA regulations require that the FmHA county supervisor in defendant's county inspect FmHA's chattel security. See 7 C.F.R. § 1962.16 (1991). Accordingly, FmHA's county supervisor has contacted defendant on several occasions attempting to schedule an inspection visit. Defendant has refused to allow such visits, alleging that the collateral is not properly secured.
 
 II. Discussion
 
 8
 Defendant first raises an issue concerning whether the district court erred in determining that no statute of limitations acts to bar an action by the FmHA on the debt defendant owed the agency. Defendant's arguments are twofold. First, defendant maintains that Congress imposed a six year statute of limitations on such an action through 28 U.S.C.A. § 2415(a) and that, because defendant defaulted on the debt owed the FmHA more than six years ago, the government would be barred from asserting a cause of action on the underlying security interests. Second, defendant contends that the security agreements are governed by and rendered invalid by North Carolina's ten-year statute of limitations for sealed instruments, N.C.Gen.Stat. § 1-47 (1983).
 
 
 9
 It is well settled that the United States is not bound by state statutes of limitation. United States v. Summerlin, 310 U.S. 414, 416 (1940). However, this doctrine does not encompass statutes of limitation which the government has chosen to impose upon itself. Guaranty Trust Co. v. United States, 304 U.S. 126, 132 (1938). 28 U.S.C.A. § 2415(a) states in pertinent part:
 
 
 10
 (a) ... every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ...: Provided, That in the event of later partial payment or written acknowledgment of debt, the right of action shall be deemed to accrue again at the time of each such payment or acknowledgment....
 
 
 11
 28 U.S.C.A. § 2415(a) (West Supp.1991) (emphasis in original). Defendant acknowledges that the action in the instant case is not one for "money damages," but one for a declaratory judgment. However, defendant argues that the district court's ruling that the security agreements are valid implies that the government could bring an action against defendant on the debt owed to the FmHA or for conversion of the FmHA's secured chattel. Such being the case, defendant asserts that 28 U.S.C.A. § 2415(a) becomes relevant in determining the validity of the security agreements.
 
 
 12
 Defendant alleges that he defaulted on the debt to which the security agreements attach more than six years ago. This fact, according to defendant, means that any attempt by the government to maintain a cause of action on those debts would be time-barred which, in effect, invalidates the FmHA's security interest in the security agreements executed by defendant.
 
 
 13
 The government concedes that an action on defendant's underlying debt would be governed by 24 U.S.C. § 2415(a). However, a proper reading of § 2415(a) leads to the opposite result from that espoused by defendant. It is settled law that under § 2415(a), a cause of action accrues anew if a partial payment is made on the debt or if the debtor makes a written acknowledgment of the debt. See United States v. Gardner, 528 F.2d 715, 719 (6th Cir.1976), cert. denied, 426 U.S. 954 (1976). Therefore, if defendant has made any payments on the debt owed to the FmHA within the past six years, a cause of action on the debt has accrued anew for the purposes of § 2415(a).
 
 
 14
 Evidence in the record reflects that defendant has made payments toward his debt with FmHA as recently as April 28, 1987. Under section 2415(a), this payment causes an action on the debt to accrue anew thereby extending plaintiff's right to sue on the debt until at least April 28, 1993. Accordingly, the statute of limitations on the government's right to sue on the underlying debt has not expired. Thus, defendant's argument that the security agreements in question are invalid is without merit.
 
 
 15
 Defendant also argues that the security agreements executed by defendant are subject to North Carolina's ten-year statute of limitations for sealed instruments, N.C.Gen.Stat. § 1-47 (1983). In support, defendant cites United States v. Kimbell Foods, Inc., 440 U.S. 715, 716 (1979) where the Supreme Court refused to fashion a uniform federal law giving higher priority to Small Business Administration ("SBA") and FmHA liens over the liens of other secured parties. Instead, the Court applied the State's priority law to the liens in question. Id. In so doing, the Court reasoned that since the government was capable of protecting its interests in commercial dealings, no uniform federal lien law was necessary to protect the government's interest. Id.
 
 
 16
 In addition to Kimbell, defendant cites numerous cases from the Supreme Court and from other jurisdictions where courts have required the federal government to comply with state laws in other contexts. For example, in United States v. Yazell, 382 U.S. 341 (1966), the court made the SBA subject to the Texas law on coverture. In Industrial Indem. Ins. Co. v. United States, 757 F.2d 982 (9th Cir.1985), the court made the federal government, when acting under a state's disaster assistance act, subject to the state's statute of limitations when determining whether or not to allow the government's claims. Finally, in United States v. Vallejo, 660 F.Supp. 535 (W.D.Wash.1987), the court made the Veterans Administration subject to the state's anti-deficiency statute.
 
 
 17
 Defendant contends that the reasoning applied in Kimbell should be employed in the instant case. Specifically, defendant argues that North Carolina's ten-year statute of limitations for sealed instruments should be applied because this is a commercial setting and the ten-year time period is reasonable. To do so would require an extension of existing law. However, defendant maintains that the FmHA is already subject to many other state laws in connection with its secured interest in personal property. To make it subject to the state's statute of limitations, therefore, would not place an undue burden on the agency.
 
 
 18
 As stated above, it is well settled that the government is exempt from all statutes of limitation unless Congress specifically imposes one. Summerlin, 310 U.S. at 416. In actions to foreclose on its security property, Congress has not imposed any such limitation. Additionally, all the cases cited by defendant involved circumstances where Congress had not acted, state law had specifically spoken on the issue in question, and the documents themselves indicated that the parties contemplated state law would apply in the area in issue. Such is not the case here.
 
 
 19
 There exists no specific North Carolina law imposing a limitation period on the right to foreclose on a security interest. Further, there is no indication from the record that the parties intended to limit plaintiff's right to foreclose on the security agreements while the underlying debts existed. In fact, the presence of future advances clauses in all of the security agreements tends to show that the opposite intent existed. As long as the FmHA continued loaning money to defendant, the security interest would remain in effect. Finally, the facts at hand do not warrant an extension of existing law to except this case from the general rule. The district court was correct in determining that the FmHA is not subject to the North Carolina statute of limitations on sealed instruments.
 
 
 20
 The final issue before this Court is whether North Carolina's lien law, N.C.Gen.Stat. § 44-69.1 (1991), would render any of the security agreements invalid. Section 44-69.1 states that liens on certain agricultural products shall not be effective for a period longer than eighteen months from the date of sale or the date of delivery to the purchaser. In its opinion, the district court held that this statute was not applicable to the instant case. In so doing, the court simply stated that the provision does not affect the case because the government is not attempting to assert any security interest in crops that have been delivered to purchasers.
 
 
 21
 The district court's reasoning is sound. N.C.Gen.Stat. § 44-69.1 (1991) governs actions brought by a secured party against a purchaser of the crops listed in security agreements. This case does not involve such an action and, therefore, § 44-69.1 is irrelevant to the instant case.
 
 
 22
 There being no genuine issues of material fact in dispute, the judgment of the district court is
 
 
 23
 AFFIRMED.